**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH GREGORIO, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>PREMIER NUTRITION CORPORATION,<br><br>                  Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Gregorio ("Plaintiff"), through his undersigned attorneys, Barbat, Mansour & Suciu PLLC and Bursor & Fisher, P.A., bring this Class Action Complaint against Defendant Premier Nutrition Corporation ("Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1. Defendant formulates, manufactures, advertises and sells the popular "Premier Protein" branded ready-to-drink ("RTD") protein product and protein bars (collectively the "Products") throughout the United States, including in New York. Defendant markets its Products in a systematically misleading manner, by misrepresenting that its Products have specific amounts of protein that they do not in fact contain (the "Misrepresentations").

2. Because Defendant's sales are driven by consumers seeking protein supplementation, Defendant prominently displays the total protein content of its Products on the front and back of each product's label.

3.      Plaintiff and each of the Class members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek compensatory damages, statutory damages, and injunctive relief.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d), Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendant transacts business and/or have agents within this District.

## PARTIES

6.      Plaintiff Joseph Gregorio is a citizen of New York who resides in New York, New York.  In the summer of 2016, Plaintiff Gregorio purchased Premier Protein RTDs from a Walmart store located in New York.  Prior to purchase, Mr. Gregorio carefully read the Premier Protein RTDs labeling, including the representation that it contained "30 g[rams] PROTEIN."  Mr. Gregorio understood this to mean that the Premier Protein RTDs contained 30 grams of protein, and relied on it in that he would not have purchased Premier Protein RTDs, or would have only been willing to pay a substantially reduced price for Premier Protein RTDs, had he known that this representation was false and misleading.

7.      Premier Nutrition Corporation is incorporated in the state of Delaware, with a principal place of business located at 5905 Christine Avenue, Emeryville, CA 94608.

## GENERAL ALLEGATIONS

8.    It is axiomatic that the amount of reported protein contained within Defendant's RTD and Protein Bar Products is material to any consumer seeking to purchase a protein supplement. Accordingly, Defendant fortifies each RTD Product with Milk Protein Concentrate, Calcium Caseinate, and Whey Protein Concentrate. These protein sources differ from raw milk because they are processed to include a higher concentration of protein and remove much of the fats and carbohydrates traditionally found in milk and other naturally occurring beverages. Defendant's "Premier Protein Blend" in its Protein Bar Products contains Soy Protein Isolate, Whey Protein Hydrolysate, and Whey Protein Concentrate.  The protein sources used in the Products allow Defendant to add precise amounts of protein into the Products.  Thus, the type of concentrated protein within the Products are particularly prized.

9.    Defendant labels and advertises all of its Products in a manner that highlights the amount of added protein contained within. Each Product lists its respective protein content on each Product's front label, directly below the title of the Product, as well as on the back nutritional label. Such representations constitute an express warranty regarding the Products' protein content.

10.    For example, Defendant's RTD product label plainly states that it fortified with 30 grams of protein on the front of the packaging and also indicates that there are 30 grams of protein per bottle in the Nutrition Facts section[1]:

---

[1] All product images contained within this complaint were taken from Defendant's website.



# Nutrition Facts

Serving Size      1 Shake (11 fl oz) (325 mL)
Servings Per Container 1

**Amount Per Serving**

| Calories 160 | Calories from Fat | 25 |
|---|---|---|

| | | % Daily Value * |
|---|---|---|
| **Total Fat** 3g | | **5%** |
| Saturated Fat 1g | | **5%** |
| Trans Fat 0g | | |
| **Cholesterol** 20mg | | **7%** |
| **Sodium** 210mg | | **9%** |
| **Potassium** 450mg | | **13%** |
| **Total Carbohydrate** 5g | | **2%** |
| Dietary Fiber 3g | | **12%** |
| Sugars 1g | | |
| **Protein** 30g | | **60%** |

| Vitamin A 25% | • | Vitamin C  25% |
|---|---|---|
| Calcium 50% | • | Iron  25% |
| Vitamin D 25% | • | Vitamin E 25% |
| Vitamin K 25% | • | Thiamin 25% |
| Riboflavin 25% | • | Niacin 25% |
| Vitamin B6 25% | • | Folate 25% |
| Vitamin B12 25% | • | Biotin 25% |
| Pantothenic Acid 25% | • | Phosphorus 50% |
| Iodine 25% | • | Magnesium 25% |
| Zinc 25% | • | Selenium 25% |
| Copper 25% | • | Manganese 25% |
| Chromium 25% | • | Molybdenum 25% |

*Percent Daily Values are based on a 2,000 calorie diet. Your daily
values may be higher or lower depending on your caloric needs.

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

Calories per gram:
Fat        9     •     Carbohydrate 4     •     Protein 4

11.     However, based upon testing commissioned by Plaintiff's attorneys, the RTD Products were only shown to contain between 26.9 grams and 28.34 grams.

12.     Similarly, Defendant's Protein Bar product label states plainly that it fortified with 30 grams of protein on the front of the packaging and also indicates that there are 30 grams of protein per bottle in the Nutrition Facts section:



13.     However, based upon testing commissioned by Plaintiff's attorneys, the Protein Bar Products were only shown to contain 25.9 grams per bar.

14.     Pursuant to 21 U.S.C. § 321(f), Defendant's Products constitute a "food" regulated by the FDCA, 21 U.S.C. § 301, *et seq.*, and other FDCA regulations.

15.     Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states[2], which deem food misbranded when "its labeling is false or misleading in any particular."

16.     Defendant's false, deceptive and misleading label statements are unlawful under state Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

17.     New York has expressly adopted the federal food labeling requirements as its own. Thus, a violation of federal food labeling laws is an independent violation of New York law and actionable as such.

18.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

19.     Defendant intended for Plaintiff and the Class members to be misled.

20.     Defendant's misleading and deceptive practices proximately caused harm to the Plaintiff and the Class.

## **CLASS ACTION ALLEGATIONS**

21.     Plaintiff brings this action individually and as representatives of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of the below-defined Classes:

> **National Class:** All persons in the United States that purchased the Products.

---

[2] *See, e.g.*, New York Consolidated Laws, Agriculture and Markets Law - AGM § 201.

**Consumer Fraud Multi-State Class:** All persons in the states of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington that purchased the Products.[3]

**New York Subclass:** All persons in the state of New York that purchased the Products.

Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

22. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

23. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

24. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate

---

[3] The states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350 *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

over questions affecting only individual Class members. Such common questions of law or fact include:

    a.   The true nature and quality of the protein in the Products;

    b.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    c.   Whether Defendant's actions violate  the state consumer fraud statutes invoked below;

    d.   Whether Defendant breached an express warranty to Plaintiff and Class members; and

    e.   Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members.

25.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

26.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff.

27.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representatives because his interests do not conflict with the interests of the other Class members he seeks to represent, he has retained counsel competent and

experienced in complex class action litigation, and they will prosecute this action vigorously. The

Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

28.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**

Absent a representative class action, members of the Classes would continue to suffer the harm

described herein, for which they would have no remedy. Even if separate actions could be brought

by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and

expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and

adjudications that might be dispositive of the interests of similarly situated purchasers,

substantially impeding their ability to protect their interests, while establishing incompatible

standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R.

Civ. P. 23(b)(1).

29.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**

Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other

members of the Classes, thereby making appropriate final injunctive relief and declaratory relief,

as described below, with respect to the members of the Classes as a whole.

30.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior

to any other available means for the fair and efficient adjudication of this controversy, and no

unusual difficulties are likely to be encountered in the management of this class action. The

damages or other financial detriment suffered by Plaintiff and the other members of the Classes

are relatively small compared to the burden and expense that would be required to individually

litigate their claims against Defendant, so it would be impracticable for Class members to

individually seek redress for Defendant's wrongful conduct. Even if Class members could afford

individual litigation, the court system could not. Individualized litigation creates a potential for

inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
### Violation Of State Consumer Fraud Acts
### (On Behalf Of The Multi-State Class)

31.     Plaintiff incorporates paragraphs 1-30 as if fully set forth herein.

32.     The Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class[4] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

33.      Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

34.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

35.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II
### Deceptive Acts Or Practices, New York GBL § 349
### (In The Alternative To Count I And On Behalf Of The New York Subclass)

36.     Plaintiff incorporates paragraphs 1-35 as if fully set forth herein.

---

[4] California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

37.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

38.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making the Misrepresentations.

39.     The foregoing deceptive acts and practices were directed at consumers.

40.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, and benefits of the Products to induce consumers to purchase same.

41.     Plaintiff and members of the New York Subclass were injured because:  (a) they would not have purchased the Products if they had known that the Products did not contain the represented protein content; (b) they paid a price premium for the Products based on Defendant's Misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised, namely the represented protein content.  As a result, Plaintiff and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Product or in the difference in value between the Products as warranted and the Products as actually sold.

42.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### False Advertising, New York GBL § 350
### (In The Alternative To Count I And On Behalf Of The New York Subclass)

43.     Plaintiff incorporates paragraphs 1-42 as if fully set forth herein.

44.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

45.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York GBL.

46.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to, the Misrepresentations, were and are directed to consumers.

47.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

48.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, have resulted in consumer injury or harm to the public interest.

49.     Plaintiff and members of the New York Subclass have been injured because:  (a) they would not have purchased the Products if they had known that the Products did not contain the represented protein content; (b) they paid a price premium for the Products based on Defendant's Misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised, namely the represented protein content.  As a result, Plaintiff and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

50.     As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, Plaintiff has suffered and will continue to suffer economic injury.

51.     Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendant's Misrepresentations because they paid more for the Products than they would have had they known the truth about the Products.

52.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

<h2 style="text-align:center">COUNT IV<br>Breach Of Express Warranty<br>(On Behalf Of The National Class)</h2>

53.     Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

54.     Plaintiff, and each member of the National Class, formed a contract with Defendant at the time Plaintiff and the other National Class members purchased the Products.  The terms of the contract included the promises and affirmations of fact made by Defendant on the Products' packaging and throughout its marketing and advertising, including the total protein count contained in the Products. This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the National Class and Defendant.

55.     Defendant purports through their advertising, labeling, marketing and packaging to create an express warranty that the Products contained a specific protein content.

56.     Plaintiff and the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

57.     Defendant breached express warranties about the Products and their qualities because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises described above.

58.     Plaintiff and each of the members of the National Class would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products did and did not contain.

59.     As a result of Defendant's breach of express warranty, Plaintiff and each of the members of the National Class have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

60.     On July 24, 2017, prior to filing this action, Plaintiff's counsel sent Defendant a pre-suit notice letter, via certified mail return receipt requested, that complied in all respects with U.C.C. §§ 2-313, 2-607. Plaintiff's counsel sent Defendant a letter advising them that they breached an express warranty and demanded that they cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as Exhibit A.

<u>**COUNT V**</u>
**Unjust Enrichment**
**(In The Alternative To Count IV And On Behalf Of The National Class)**

61.     Plaintiff incorporates paragraphs 1-60 as if fully set forth herein.

62.     Plaintiff and the other members of the National Class conferred benefits on Defendant by purchasing the Products.

63.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the other members of the National Class' purchase of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the National Class because they would have not purchased the Products if the true facts would have been known.

64.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the National Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other members of the National Class for their unjust enrichment, as ordered by the Court.

### COUNT VI
**Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.***
**(On Behalf Of The National Class)**

65.     Plaintiff incorporates paragraphs 1-64 as if fully set forth herein.

66.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

67.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

68.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

69.     In connection with the sale of the Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the Product did, in fact, contain "30 g[rams] PROTEIN."

70.     In fact, the Products do not contain 30 grams of protein.

71.     By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and Class members.

72.     Plaintiff and Class members have been injured because:  (a) they would not have purchased the Products if they had known that the Products did not contain the represented protein content; (b) they paid a price premium for the Products based on Defendant's Misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised, namely the represented protein content.  As a result, Plaintiff and Class members have been damaged either

in the full amount of the purchase price of the Products or in the difference in value between the

Products as warranted and the Products as actually sold.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the other Class members respectfully request that the Court:

A.      Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Award damages, including compensatory, exemplary, statutory, incidental, consequential, actual, and punitive damages to Plaintiff and the Classes in an amount to be determined at trial;

C.      Award Plaintiff and the Classes their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees;

D.      Grant restitution to Plaintiff and the Classes and require Defendant to disgorge their ill-gotten gains;

E.      Permanently enjoin Defendant from engaging in the unlawful conduct set forth herein; and

F.      Grant any and all such other relief as the Court deems appropriate.

Dated: August 8, 2017                     Respectfully submitted,

                                          _____/s/ Philip L. Fraietta_____
                                          Philip L. Fraietta
                                          *pfraietta@bursor.com*
                                          Frederick J. Klorczyk III
                                          *fklorczyk@bursor.com*
                                          **BURSOR & FISHER, P.A.**
                                          888 Seventh Avenue
                                          New York, New York 10019
                                          Phone:  212.989.9113
                                          Fax:  212.989.9163

                                          Nick Suciu III (*Pro Hac Vice* Application
                                          Forthcoming)
                                          *nicksuciu@bmslawyers.com*
                                          **BARBAT, MANSOUR & SUCIU PLLC**
                                          1644 Bracken Rd.
                                          Bloomfield Hills, Michigan 48302
                                          Phone: 313.303.3472

                                          Anne Barker (*Pro Hac Vice* Application
                                          Forthcoming)
                                          *Abarker.consumerlawgroup@gmail.com*
                                          **Consumer Law Group PC**
                                          306 Joy Street
                                          Fort Oglethorpe, Georgia 30742
                                          Phone: 706.858.0325

                                          ***Counsel For Plaintiff***
                                          ***And The Proposed Putative Classes***

**EXHIBIT A**

# BURSOR & FISHER
P.A.

888 SEVENTH AVE.
NEW YORK, NY 10019
www.bursor.com

JOSEPH I. MARCHESE
TEL: 646.837.7410
FAX: 212.989.9163
JMARCHESE@BURSOR.COM

July 24, 2017

***Via Certified Mail – Return Receipt Requested***

Premier Nutrition, Inc.
5905 Christine Avenue
Emeryville, CA  94608

Re:     *Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.;*
        *Violation of U.C.C. §§ 2-313, 2-314; N.Y. G.B.L. §§ 349, 350; and all other applicable*
        *laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Premier Nutrition Inc., ("You" or "Defendant") arising from breaches of warranty under the Magnuson-Moss Warranty Act on behalf of our client, Joseph Gregorio, and a class of all similarly situated purchasers of Premier Protein Shakes and Premier Protein Bars (collectively, the "Products"). This letter also serves as notice pursuant to U.C.C. § 2-607(3)(a) concerning the breaches of express and implied warranties described herein.  This letter additionally serves as notice of violations of all applicable consumer protection laws.

You have participated in the manufacture, marketing, and sale of Premier Protein Shakes and Bars.  Premier Protein Shakes and Bars have been marketed and sold as having "30 Grams [of] Protein" (the "Misrepresentations").  In fact, Premier Protein Shakes and Bars do not contain "30 Grams [of] Protein" based on independent lab testing. Accordingly, these representations, made on the Products' labeling, are false and misleading.

In the summer of 2016, Mr. Gregorio purchased Premier Protein Shakes in reliance on the Misrepresentations.  Defendant expressly warranted that Premier Protein Shakes contained 30 grams of protein.  Defendant breached that express warranty because the Products did not include the claimed amount.  *See* U.C.C. § 2-313.

Defendant's conduct is also a deceptive business practice under all applicable consumer protection laws.

Mr. Gregorio is acting on behalf of a class defined as all persons in the United States who purchased Premier Protein Shakes and Premier Protein Bars.

BURSOR&FISHER
P.A.

To cure these defects, we demand that you (1) cease and desist from further sales of mislabeled Premier Protein Shakes and Bars; (2) issue an immediate recall of mislabeled Premier Protein Shakes and Bars; and (3) make full restitution to all purchasers of Premier Protein Shakes and Bars.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the design, development, supply, production, extraction, and/or testing of Premier Protein Shakes and Bars;

2. All documents concerning the advertisement, marketing, or sale of Premier Protein Shakes and Bars;

3. All documents concerning communications with any retailer involved in the marketing or sale of Premier Protein Shakes and Bars;

4. All documents concerning communications with purchasers of Premier Protein Shakes and Bars;

5. All documents concerning protein content testing;

6. All documents concerning communications with federal or state regulators; and

7. All documents concerning the total revenue derived from sales of Premier Protein Shakes and Bars in the United States.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me right away.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

Joseph I. Marchese