**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSEPH GREGORIO, individually and on behalf of all others similarly situated,

Plaintiff,

    v.

PREMIER NUTRITION CORPORATION,

Defendant.

Civil Action No. 1:17-cv-05987-AT

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**PRELIMINARY APPROVAL OF FIRST AMENDED CLASS ACTION SETTLEMENT**

Dated:  September 13, 2018

**BURSOR & FISHER, P.A.**

Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jmarchese@bursor.com
       pfraietta@bursor.com

L. Timothy Fisher (*Pro Hac Vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
      fklorczyk@bursor.com

**BARBAT, MANSOUR & SUCIU PLLC**

Nick Suciu III (*Pro Hac Vice*)
1644 Bracken Road
Bloomfield Hills, MI 48302
Telephone:  (313) 303-3472
Email:  nicksuciu@bmslawyers.com

*Proposed Class Counsel*

[Supporting Counsel listed on signature page]

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

    A.    Plaintiff's Allegations ............................................................... 2

    B.    The Litigation History And Settlement Discussions ................. 3

TERMS OF THE AMENDED SETTLEMENT.................................................. 6

    A.    Class Definition ........................................................................ 6

    B.    Monetary Relief ........................................................................ 6

    C.    Injunctive Relief....................................................................... 7

    D.    Release ...................................................................................... 7

    E.    Notice And Administration Expenses....................................... 7

    F.    Incentive Award ....................................................................... 7

    G.    Attorneys' Fees And Expenses ................................................ 8

ARGUMENT ..................................................................................................... 8

    I.    PRELIMINARY APPROVAL OF THE AMENDED
        SETTLEMENT IS APPROPRIATE ........................................ 8

        A.    Litigation Through Trial Would Be Complex, Costly, And
            Long (*Grinnell* Factor 1)................................................... 10

        B.    The Reaction Of The Class (*Grinnell* Factor 2)............................................. 11

        C.    Discovery Has Advanced Far Enough To Allow The
            Parties To Responsibly Resolve The Case (*Grinnell* Factor
            3) ...................................................................................... 12

        D.    Plaintiff Would Face Real Risks If The Case Proceeded
            (*Grinnell* Factors 4 And 5).................................................. 12

        E.    Establishing A Class And Maintaining It Through Trial
            Would Not Be Simple (*Grinnell* Factor 6) ................................. 13

        F.    Defendant's Ability To Withstand A Greater Judgment
            (*Grinnell* Factor 7) ............................................................ 13

        G.    The Settlement Amount Reasonable In Light Of The
            Possible Recovery And The Attendant Risks Of Litigation
            (*Grinnell* Factors 8 And 9).................................................. 14

    II.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS
        IS APPROPRIATE ................................................................. 15

        A.    Numerosity............................................................................. 16

        B.    Commonality.......................................................................... 17

        C.    Typicality............................................................................... 18

        D.    Adequacy Of The Named Plaintiff ......................................... 19

            1.    Common Questions Predominate .......................... 21

2.    A Class Action Is A Superior Mechanism ....................................... 23

III.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS
CLASS COUNSEL .................................................................................... 24

IV.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ........................... 25

A.    The Content Of The Proposed Class Notice Complies With
Rule 23(c)(2). ........................................................................... 25

B.    The Plan For Distribution Of The Class Notice Will
Comply With Rule 23(c)(2) ........................................................ 26

CONCLUSION ......................................................................................................... 27

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ackerman v. Coca-Cola Co.*,
   2010 WL 2925955 (E.D.N.Y. July 21, 2010) .......................................................................... 18

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................... 15, 21, 22, 24

*Brown v. Title Ticor Ins. Co.*,
   982 F.2d 386 (9th Cir. 1992) ............................................................................................ 21

*Cassese v. Washington Mutual, Inc.*,
   255 F.R.D. 89 (E.D.N.Y. 2008) ........................................................................................ 23

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ...................................................................................... 9, 10, 14

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ............................................................................................... 17

*County of Suffolk v. Long Island Lighting Co.*,
   710 F. Supp. 1422 (E.D.N.Y. 1989) ................................................................................. 15

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ............................................................................................. 19

*Dziennik v. Sealift, Inc.*,
   2007 WL 1580080 (E.D.N.Y. May 29, 2007) ................................................................... 20

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................... 19, 20, 21, 22

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................................... Passim

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) .......................................................................................................... 17

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .................................................................... 14

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) ............................................................................................. 23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)................................................................ 15, 16, 24, 26

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) ............................................................ 22

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................ 10, 12, 13

*In re BankAmerica Corp. Securities Litig.*,
  210 F.R.D. 694 (E.D. Mo. 2002).......................................................................... 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................... 9

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)............................................................................ 15, 16

*In re Mercedes-Benz Tele Aid Contract Litig.*,
  257 F.R.D. 46 (D.N.J. 2009) ............................................................................. 23

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993)...................................................................... 26, 27

*In re Prudential Insur. Sales Practices Litig.*,
  962 F.Supp. 450 (D.N.J. 1997) .......................................................................... 23

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................ 19

*In re Traffic Executive Ass'n*,
  627 F.2d 631 (2d Cir. 1980)............................................................................... 8

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001).............................................................................. 24

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000).............................................................................. 15

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
  109 F.R.D. 391 (S.D.N.Y. 1986) ........................................................................ 17

*Lenahan v. Sears, Roebuck & Co.*,
  2006 WL 2085282 (D.N.J. July 10, 2006)............................................................... 16

*Lynn's Food Stores, Inc. v. U.S.*,
  679 F.2d 1350 (11th Cir. 1982)........................................................................... 9

*Marcus v. Kan. Dep't of Revenue*,
   209 F. Supp. 2d 1179 (D. Kan. 2002) ........................................................ 9

*Marisol A. v. Guiliani*,
   126 F.3d 372 (2d Cir. 1997) .................................................................... 18

*Martens v. Smith Barney Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) .............................................................. 20

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998) ...................................................................... 8

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) .............................................................. 22

*Milonas v. Williams*,
   691 F.2d 931 (10th Cir. 1982) ................................................................. 18

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) .................................................................... 14

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .................................................................................. 21

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983) .................................................................... 17

*Rapoport-Hecht v. Seventh Generation, Inc.*,
   2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017) ...................................... 22, 23

*Reynolds v. Lifewatch, Inc.*,
   136 F. Supp. 3d 503 (S.D.N.Y. 2015) ...................................................... 22

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................... 17, 18

*Rodriguez v. It's Just Lunch, International*,
   300 F.R.D. 125 (S.D.N.Y. 2014) .............................................................. 22

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) .................................................................... 21

*Savino v. Computer Credit, Inc.*,
   173 F.R.D. 346 (E.D.N.Y. 1997) ............................................................. 17

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981) .......................................................... 10

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
  2004 WL 2997957 (S.D.N.Y. May 14, 2004) ........................................... 14

*Torres v. Gristede's Oper. Corp.*,
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ........................................... 12

*Toure v. Cent. Parking Sys.*,
  2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .......................................... 19

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ............................................................. 17

*Trinidad v. Breakaway Courier Sys., Inc.*,
  2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ............................................. 19

*Wagner v. NutraSweet Co.*,
  95 F.3d 527 (7th Cir. 1996) .................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................... 17, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................... 8, 9

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................... 18

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008) ........................................................ 9

**STATUTES**

21 U.S.C. § 343(a)(1) .................................................................................. 3

28 U.S.C. § 1715 ...................................................................................... 27

**RULES**

Fed. R. Civ. P. 8 ....................................................................................... 11

Fed. R. Civ. P. 12(b)(6) .............................................................................. 11

Fed. R. Civ. P. 23 .................................................................... 17, 24, 26, 27

Fed. R. Civ. P. 23(a) ..................................................................... 16, 19, 21

Fed. R. Civ. P. 23(a)(1) ............................................................................. 16

Fed. R. Civ. P. 23(a)(2) ................................................................................ 17, 18

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ................................................................................ Passim

Fed. R. Civ. P. 23(c)(2) .................................................................................. 25, 26

Fed. R. Civ. P.  23(c)(2)(B) ........................................................................... 25, 26

Fed. R. Civ. P.  23(c)(3) ...................................................................................... 25

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................. 24

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................. 24

Fed. R. Civ. P. 26 ................................................................................................. 4

**Other Authorities**

Newberg on Class Actions (4th ed. 2002) .............................................................. 8

## INTRODUCTION

In this putative class action, Plaintiff Joseph Gregorio alleges that Defendant Premier Nutrition Corporation ("Premier" or "Defendant") systematically misled consumers by misrepresenting that its ready-to-drink ("RTD") protein products contained 30 grams of protein when in fact they did not. Earlier this year, this Court preliminarily approved a Class Action Settlement (the "Original Settlement") that would have established a $9 million non-reversionary hybrid fund, consisting of cash and product vouchers. *See* 5/14/18 Order Granting Preliminary Approval (ECF No. 62). Since that time, the Parties have renegotiated their agreement in an effort to deliver more cash relief to class members. The resulting First Amended Class Action Settlement Agreement (the "Amended Settlement") creates a $9 million non-reversionary all-cash fund, which will be used to pay all approved claims by class members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to proposed Class Counsel to the extent awarded by the Court. Class members with proof of purchase are eligible to receive a cash award subject to a $40 cap and *pro rata* adjustment based on claims volume. Class members without proof of purchase are eligible to receive a cash award subject to a $20 cap and *pro rata* adjustment.

Given that the Amended Settlement provides even greater relief than the Original Settlement which this Court already preliminarily approved, the Court should have no hesitation finding that the Amended Settlement falls within the range of possible approval. Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Amended Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Bursor & Fisher, P.A. and Barbat, Mansour & Suciu, PLLC as Class Counsel; (4) appoint Joseph Gregorio as the Class Representative for the Settlement Class; and (5) approve the Media Plan for the Amended

1

Settlement described in the Amended Settlement and its Exhibits, as well as the specific Notice

of Class Action and Proposed Settlement (the "Proposed Notice"), attached as Exhibits B-F to

the Amended Settlement, and direct distribution of the Proposed Notice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Allegations

Defendant formulates, manufactures, advertises and sells the popular "Premier Protein"

branded ready-to-drink ("RTD") protein shakes throughout the United States, including in New

York.  Plaintiff alleges that Defendant marketed its Products in a systematically misleading

manner by misrepresenting that its Products had specific amounts of protein that they did not in

fact contain (the "Misrepresentations").  Plaintiff's Second Amended Complaint ("SAC"), ECF

No. 50, ¶ 1.  Because Defendant's sales are driven by consumers seeking protein

supplementation, Defendant prominently displays the total protein content of its Products on the

front and back of each product's label.  *Id.* ¶ 2.  Plaintiff further alleges that Defendant labels and

advertises all of its Products in a manner that highlights the amount of added protein contained

within.  Each Product lists its respective protein content on each Product's front label, directly

below the title of the Product, as well as on the back nutritional label.  *See* Declaration of Hanny

Kanafani ("Kanafani Decl.") ¶ 3.  Such representations constitute an express warranty regarding

the Products' protein content.  *Id.* ¶ 9.  Specifically, Defendant's RTD product label plainly

states that it fortified with 30 grams of protein on the front of the packaging and also indicates

that there are 30 grams of protein per bottle in the Nutrition Facts section.  This "30g protein"

representation is identical throughout all of Defendant's RTD products – however, based upon

testing commissioned by Plaintiff's attorneys, the RTD Products were only shown to contain

between 26.9 grams and 28.34 grams.  *Id.* ¶¶ 10-11.

Accordingly, Plaintiff alleges that Defendant's false, deceptive and misleading label

statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular." *Id.* ¶ 13.  Defendant's false, deceptive and misleading label statements are unlawful under state Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce. *Id.* ¶ 14.

### B.   The Litigation History And Settlement Discussions

Plaintiff filed his class action lawsuit on August 8, 2017 in the United States District Court for the Southern District of New York.  *See* 4/2/18 Declaration of Philip L. Fraietta ("Fraietta Decl.") ¶ 4.  On September 12, 2017, Plaintiff served his first set of Requests for the Production of Documents and Interrogatories on Defendant.  *Id.* ¶ 5.  On September 18, 2017, Premier filed a letter requesting adjournment of the Initial Pretrial Conference, an extension of time for Rule 26 initial disclosures and discovery plan, and to stay all discovery pending the Court's decision on Premier's forthcoming motion to dismiss.  *Id.* ¶ 6.  That same day, the Court denied Premier's request to adjourn the Initial Pretrial Conference and for an extension of time for Rule 26 disclosures and a discovery plan, and held that the propriety of a stay can be argued in person at the Initial Pretrial Conference.  *Id.*

On October 5, 2017, the Court held an Initial Pretrial Conference and declined to stay discovery.  The Court also entered a Civil Case Management Plan and Scheduling Order.  *Id.* ¶ 7.  On October 6, 2017, Defendant served its first set of Requests for the Production of Documents and Interrogatories on Plaintiff.  *Id.* ¶ 8.

On October 16, 2017, Premier filed Pre-Motion Letter for its forthcoming Motion to Dismiss.  *Id.* ¶ 9.  On October 23, 2017, Plaintiff filed his Opposition to Defendant's Pre-Motion

Letter for Motion to Dismiss.  *Id.*  On October 25, 2017, having considered the Parties' pre-motion letters, the Court granted Premier permission to file its motion to dismiss.  *Id.*

On October 19, 2017, Defendant served its Responses to Plaintiff's First Set of Requests for the Production of Documents and Interrogatories.  *Id.* ¶ 10.  On October 30, 2017, Plaintiff served his Responses to Defendant's First Set of Requests for the Production of Documents and Interrogatories.  *Id.* ¶ 11.  On November 10, 2017, Defendant began its initial document production.  Defendant made a subsequent document production on January 5, 2018.  *Id.* ¶ 12.

On November 27, 2017, Premier filed its Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked Article III standing and failed to state a claim upon which relief could be granted.  *Id.* ¶ 13.  In response to purported deficiencies identified by Premier's Motion to Dismiss, Plaintiff filed his Amended Complaint on December 11, 2017.  *Id.*  On January 2, 2018, Premier filed its Motion to Dismiss Plaintiff's Amended Complaint.  *Id.* ¶ 14.  On January 15, 2018, Plaintiff filed his opposition to Premier's Motion to Dismiss.  *Id.*  On January 22, 2018, Premier filed its reply in support of its motion to dismiss.  *Id.*

From the outset of the case and including during the pendency of the motion to dismiss, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of early resolution.  *Id.* ¶ 15.  Those discussions eventually led to an agreement between the Parties to engage in private mediation, which the Parties agreed would take place before Martin Quinn, Esq., who is a neutral affiliated with JAMS San Francisco.  *Id.* ¶ 16.

The mediation took place on January 22, 2018 at JAMS's offices in San Francisco and lasted approximately ten hours.  *Id.* ¶ 17.  The Parties engaged in good faith negotiations, which at all times were at arms' length.  *Id.*  At the conclusion of the mediation, Mr. Quinn made a mediator's proposal to settle the case, which both sides accepted.  *Id.*

On January 23, 2018, the Parties notified the Court by joint letter that they mediated before Martin Quinn, Esq., and that the Parties reached an agreement on the material terms of a class action settlement.  ECF No. 41.  As a result, on January 24, 2018, the Court issued a Memo Endorsement which deferred ruling on Premier's motion to dismiss.  ECF No. 42.

On April 2, 2018, Plaintiff moved for preliminary approval of the Original Settlement. Fraietta Decl. ¶ 18 (citing ECF No. 51).  On May 14, 2018, the Court granted Plaintiff's Motion for Preliminary Approval.  *Id.* ¶ 19 (citing ECF No. 62).

On May 21, 2018, pursuant to that Order, Plaintiff's counsel subpoenaed Sam's Club and Costco for class member identifying data in order to provide direct notice to Settlement Class Members.  *Id.* ¶ 20 (citing ECF No. 62 ¶ 13).  Plaintiff's counsel worked diligently with counsel for both retailers to obtain the data promptly.  *Id.* ¶ 21.  However, the retailers did not complete their document productions within the time requested.  *Id.*  Sam's Club made its production on June 15, 2018, and while Costco originally promised to produce that same day, it did not make its production until August 6, 2018.  *Id.*; *see also id.* ¶ 24.  Thus, on July 5, 2018, the Parties submitted a joint letter to the Court requesting that the Court amend the Preliminary Approval Order to extend the deadlines to disseminate notice.  *Id.* ¶ 22 (citing ECF No. 66).  On July 10, 2018, the Court issued an Amended Order Granting Preliminary Approval.  *Id.* ¶ 23 (citing ECF No. 68).

Thereafter, Plaintiff's counsel continued to work diligently with Costco's counsel to obtain its document production.  *Id.* ¶ 24.  However, Costco did not make its document production until August 6, 2018.  *Id.*  Upon receiving the data, the Parties, with the Settlement Administrator, analyzed the data produced.  *Id.* ¶ 25.  That analysis showed that the retailers had produced a greater volume of data than the Parties had anticipated, thus necessitating additional notice costs, primarily due to increased postage for more direct mail.  *Id.*

As a result of those additional notice costs, the Parties decided to renegotiate the Original Settlement in an effort to deliver more cash relief to class members. *Id.* ¶ 26. These negotiations resulted in an agreement to shift the settlement from a $9 million hybrid fund, consisting of cash and product vouchers, to a $9 million all-cash fund. *Id.* ¶ 27. The Parties then entered into a First Amended Settlement Agreement on September 7, 2018. *Id.* ¶ 28.

Additionally, on September 7, 2018, the Parties submitted a joint letter to the Court informing the Court of their agreement to the Amended Settlement, and requesting that the Court vacate the July 10, 2018 Amended Order Granting Preliminary Approval. *Id.* ¶ 29 (citing ECF No. 69). On September 10, 2018, the Court granted that request. *Id.* ¶ 30 (citing ECF No. 70).

## TERMS OF THE AMENDED SETTLEMENT

The key terms of the First Amended Class Action Settlement Agreement ("Amended Settlement"), attached as Exhibit A, are briefly summarized as follows:

### A. Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as:

> All persons in the United States (including its states, districts, or territories) who purchased Premier Protein Ready-To-Drink Protein Shakes from August 8, 2011 to the Notice Date. Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

Amended Settlement ¶ 1.30.

### B. Monetary Relief

Premier shall establish or cause to be established a $9 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be

entitled to a *pro rata* cash payment, after payment of notice and administrative expenses, attorneys' fees, and an incentive award to the Class Representative.  *Id.* ¶¶ 1.32, 2.1.  No portion of the Settlement Fund will revert to Premier.  *Id.* ¶ 2.6.

### C.   Injunctive Relief

Defendant has agreed to reevaluate and refresh its formulations for Premier Protein RTD shakes, review its manufacturing specifications and protocols for co-manufacturers producing Premier Protein RTD shakes, and work with its co-manufacturers on best practices to implement those specifications and manufacturing protocols in order to minimize the variability of the protein content contained in the Premier Protein RTD shakes.  *Id.* ¶ 2.7.

### D.   Release

In exchange for the relief described above, Premier and each of its related and affiliated entities as well as all "Released Parties" as defined in ¶ 1.27 of the Settlement will receive a full release of all claims arising out of or related to the nutrient content, or the labeling of the Premier Protein RTD Shake Products.  *See id.* ¶¶ 1.26-1.28, 6.1 for full release language.

### E.   Notice And Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administering the Settlement.  *Id.* ¶¶ 1.17, 2.1.

### F.   Incentive Award

In recognition for his efforts on behalf of the Settlement Class, Premier has agreed that Plaintiff Gregorio may receive, subject to Court approval, an incentive award of $5,000 from the Settlement Fund, as appropriate compensation for his time and effort serving as Class Representative and as a party to the Action.  Premier will not oppose any request limited to this amount.  *Id.* ¶ 2.1, 3.3.

### G.    Attorneys' Fees And Expenses

Premier has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court.  *Id.* ¶¶ 3.1.  Class Counsel has agreed to petition the Court for no more than one-third of the Settlement Fund.  *Id.*

<u>**ARGUMENT**</u>

## I.    PRELIMINARY APPROVAL OF THE AMENDED SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  The approval of a proposed class action settlement is a matter of discretion for the trial court.  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).

Preliminary approval, which is what Plaintiff seeks here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Newberg* § 11.25.  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same); *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

If the settlement was achieved through arm's-length negotiations by experienced counsel, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, *4 (S.D.N.Y. July 27, 2007); *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations . . .") (internal quotations omitted).

This first step in the settlement process allows notice to issue to the class and for class members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Although

the Court's task on this motion is to perform an "initial evaluation," *Newberg* § 11.25, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  In approving the Original Settlement, the Court found that nearly all of the *Grinnell* factors weighed in favor of approval.  The same is true of the Amended Settlement.

### A.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  As discussed above, the Parties have engaged in extensive written discovery.  The next steps in the litigation would have been resolution by the Court of Premier's Motion to Dismiss, as well as depositions of the Parties, substantial electronically

10

stored information discovery, and contested motions for summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court and creates risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all.  More specifically, Plaintiff is aware that Defendant would continue to assert a number of defenses on the merits, including that Plaintiff's allegations are insufficient under Fed. R. Civ. P. 8 and 12(b)(6), and that Plaintiff's claims are preempted under the Food, Drug, and Cosmetics Act.  Defendant will also continue to challenge Plaintiff's standing, including Plaintiff's ability to sue on behalf of non-named class members under *Bristol-Myers Squibb*.  Looking beyond trial, Plaintiff is also keenly aware of the fact that Premier could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would attempt to argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.

The Amended Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal.

Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the proposed Settlement.

## B.    The Reaction Of The Class (*Grinnell* Factor 2)

Since Notice of the Amended Settlement has not yet issued to the Class, it is not possible to gauge the reaction of the Class at this time.  Prior consumer product settlements suggest that the Class will react favorably.

**C.     Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)**

As discussed above, the Parties have conducted written discovery, including initial document production and interrogatories.  *See supra*; *see also* Fraietta Decl. ¶¶ 5-12.  The documents included Defendant's organizational hierarchy, as well as nationwide sales data for all of Defendant's RTD Products throughout the entire class period.  In addition, Class Counsel commissioned testing to measure the amount of protein in Defendant's RTD Products.  *See* SAC Ex. A.  Class Counsels' experience in similar matters, as well as the efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).  The discovery conducted in this matter clearly traverses this hurdle.  This *Grinnell* factor thus also weighs in favor of preliminary approval.

**D.     Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5)**

Although Plaintiff's case is strong, it is not without risk.  Defendant has filed a Motion to Dismiss, and has made it clear that it will both move for summary judgment on various issues and vigorously contest the certification of a litigation class.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success

by the plaintiff class against the relief offered by the settlement." *Id.* at 177 (internal quotations omitted).

In the context of this litigation, Plaintiff and the Class face risks in overcoming Defendant's summary judgment motion and certifying a class. Moreover, further litigation will only delay relief to the Class Members. The proposed Amended Settlement alleviates these risks, and provides a substantial benefit to the Class in a timely fashion. These *Grinnel* factors thus favor preliminary approval.

### E. Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present. The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would be reached only after decision on Defendant's Motion to Dismiss, after additional discovery is completed, and after exhaustive class certification briefing is filed. Defendant would argue that individual questions preclude class certification. Defendant would also argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Defendant would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. The proposed Amended Settlement eliminates this risk, expense, and delay. This factor weighs in favor of preliminary approval.

### F. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

Premier probably could withstand a greater judgment. However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9). Thus, at worst, this factor is neutral.

G.    **The Settlement Amount Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)**

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D at 186 (internal quotation omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, class members with proof of purchase are eligible to receive a *pro rata* cash award subject to a $40 cap.  Class members without proof of purchase are eligible to receive a *pro rata* cash award subject to a $20 cap.  In addition, Defendant has agreed to injunctive relief and to pay the costs of notice and administration as well as reasonable attorneys' fees and costs for Class Counsel from the all-in fund established by the Settlement.  Amended Agreement ¶¶ 1.32, 2.1, 2.3, 2.7.  Weighing the benefits of the Amended Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Amended Settlement is more than reasonable.  Moreover, when a settlement assures immediate payment of substantial amounts to Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of*

*Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of preliminary approval.

* * *

All of the *Grinnell* factors weigh in favor of approval, or at worst, are neutral.  If objections arise after notice is issued to the Class, the Court may reevaluate its determination. Because the Amended Settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## II.  CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiff respectfully requests that the Court conditionally certify the Settlement Class for purposes of effectuating the Amended Settlement.  As with the Original Settlement, the Court should determine that the proposed Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Newberg* § 11:27 (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768 (3d Cir. 1995)), and provisionally certify the settlement class, and appoint Plaintiff's counsel as Class Counsel and the Named Plaintiff as the class representative.

As discussed below, all of the certification requirements for settlement purposes are met and Defendant consents to provisional certification.  *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the

15

action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Amended Settlement Agreement, and setting the date and time of the final approval hearing. *See In re GMC*, 55 F.3d at 784; *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *6 (D.N.J. July 10, 2006) (conditionally certifying multi-state classes and granting preliminary approval to nationwide wage and hour settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### A.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1019 (9th Cir. 1998).  "Impracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. The proposed Settlement Class is comprised of United States residents who purchased Defendant's Premier Protein RTD Shake Products from August 8, 2011 to the Notice Date. Amended Agreement ¶ 1.30.  There is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

### B.    Commonality

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).  The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983); *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd in part, rev'd in part on other grounds*, 164 F.3d 81 (2d Cir. 1998).  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation.  Specifically, Plaintiff alleges that the common contention on which the claims of all class members depends is that Defendant misstated the amount of protein content on the labeling of its Premier Protein RTD Shake Products.  Plaintiff contends that determination of the truth or falsity of this contention can be made on a class wide basis and will resolve an issue – the key issue in the case – central to each class member's claims at once. Resolution of this common question requires evaluation of the question's merits under an objective standard, *i.e.*, the "reasonable consumer" test.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010).

Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

### C.      Typicality

The next requirement – typicality – requires that a class representative has claims that are typical of those of the putative class members.  Fed. R. Civ. P. 23(a)(2).  Typicality is met here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux*, 987 F.2d at 936-37.  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."

18

*Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007)

(quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Here, Plaintiff alleges that Defendant's mislabeling of its Premier Protein RTD Shake

Products is not a one-off situation unique to him, but rather, part of Defendant's alleged business

of mislabeling the protein content in its Premier Protein RTD Shake Products.  SAC ¶¶ 1, 9-10.

It is Plaintiff's contention that no matter the person – whether it be Plaintiff or other members of

the putative class – the mislabeling of Defendant's Premier Protein RTD Shake Products is done

in the exact same manner and was directed at, or affected, both Plaintiff and the members of the

putative class in the same exact way.  Accordingly, by pursuing his own claims in this matter,

Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore

satisfied.  *See, e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014)

(Rakoff, J.) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and

other class members' claims ar[o]se out of the same course of conduct by the defendant and

[were] based on the same legal theories"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-406

(S.D.N.Y. 2015) (Briccetti, J.) (same).

>    D.    **Adequacy Of The Named Plaintiff**

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy

requirement exists to ensure that the class representatives will 'have an interest in vigorously

pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other

class members.'"  *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28,

2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "'[O]nly a

conflict that goes to the very subject matter of the litigation will defeat a party's claim of

representative status.'" *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

In this case, Plaintiff – like each and every one of the Settlement Class Members – is a purchaser of Premier Protein RTD Shake Products that were allegedly mislabeled as to the stated amount of protein. SAC ¶¶ 8-18. Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the damages to which they are entitled. As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class and his pursuit of this litigation should be clear evidence of that.

Likewise, proposed Class Counsel – Bursor & Fisher, P.A. and Barbat, Mansour & Suciu PLLC – have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Fraietta Decl. ¶¶ 19-20. Class Counsel regularly engages in major complex litigation involving consumer products, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. *Id.*; *see* Firm Resume of Bursor & Fisher, P.A., attached hereto as Exhibit B; Firm Resume of Barbat, Mansour & Suciu PLLC, attached hereto as Exhibit C; *see also Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Welspun Litigation*, Case No. 16-cv-06792-RJS (S.D.N.Y. January 26, 2017) (appointing Bursor & Fisher interim lead counsel to represent a proposed nationwide class of purchasers of mislabeled Welspun Egyptian cotton bedding products).

Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, aggressively

pursuing those claims through motion practice, conducting both formal and informal discovery, participating in a private mediation with Martin Quinn, Esq. of JAMS, and ultimately, negotiating a favorable class action settlement.  Fraietta Decl. ¶¶ 5-31.  In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

Accordingly, since Plaintiff and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  That Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently.  *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).  This approach protects class members' due process rights.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

### 1.     Common Questions Predominate

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the

proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521

U.S. at 623.  Where plaintiffs are "unified by a common legal theory" and by common facts, the

predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502

(S.D.N.Y. 2005).  The predominance requirement "is designed to determine whether 'proposed

classes are sufficiently cohesive to warrant adjudication by representation.'"  *Frank*, 228 F.R.D.

at 183 (quoting *Amchem*, 521 U.S. at 623).

   Even in the litigation context, differences in state laws frequently do not predominate

over common issues where the defendant's wrongdoing can be traced to a common practice or

misrepresentation that affects all class members.  In *Rodriguez v. It's Just Lunch, International*,

for example, the court certified the state law fraud claims of a national class, explaining that such

claims "can implicate common issues and be litigated collectively, despite the existence of state

law variations, so long as the elements of the claim . . . are substantially similar and any

differences fall into a limited number of predictable patterns which can be readily handled by

special interrogatories or special verdict forms."  300 F.R.D. 125, 140-41 (S.D.N.Y. 2014); *see

also Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 518 (S.D.N.Y. 2015) (noting that where

common conduct might establish liability under a number of state laws, predominance might be

satisfied); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (finding that

plaintiffs had satisfied the predominance test for nationwide litigation class despite the need to

apply the laws of numerous states, explaining that "because Defendant uniformly misrepresented

[its product] to all class members, this action with its standardized misrepresentations established

by generalized proof is appropriate for class certification").  *See Hart v. BHH, LLC*, 2017 WL

2912519 (S.D.N.Y. July 7, 2017) (granting class certification of nationwide fraud class);

*Rapoport-Hecht v. Seventh Generation, Inc.*, 2017 WL 5508915, at *3 (S.D.N.Y. Apr. 28, 2017)

("the Court nonetheless finds that certification of the proposed settlement class is appropriate

here.  As Plaintiffs point out, numerous courts have certified nationwide classes based on a

common claim of unjust enrichment . . .  and some have done so while explicitly recognizing that

there are some minor variations among states regarding the elements of unjust enrichment . . .");

*Cassese v. Washington Mutual, Inc.*, 255 F.R.D. 89, 97-98 (E.D.N.Y. 2008) (certifying national

class including unjust enrichment claims, and explaining that "variations present in state

common law of contracts, unjust enrichment, and fraud, as well as potential variations among

state consumer protection laws do not preclude certification"); *In re Mercedes-Benz Tele Aid

Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) ("[w]hile there are minor variations in the

elements of unjust enrichment under the laws of the various states, those differences "are not

material and do not create an actual conflict").

    In sum, Plaintiff alleges a common course of conduct engaged in by Defendant.  In these

circumstances, courts find, particularly for purposes of settlement that there is predominance of

common questions over individual issues.  *See Rapoport-Hecht*, 2017 WL 5508915, at *3

(holding that "the proposed settlement class meets the predominance requirement of Rule

23(b)(3)" and thus "certification of the settlement class is appropriate …"); *see also In re

Prudential Insur. Sales Practices Litig.*, 962 F.Supp. 450, 511-512 n.45 (D.N.J. 1997)

("*Prudential I*") (citing numerous other cases).

## 2.    A Class Action Is A Superior Mechanism

    The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether

"the class action device [is] superior to other methods available for a fair and efficient

adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule

23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class

members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[1]

Here, Plaintiff and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiff is unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations.

Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon*, 150 F.3d at 1023. A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

## III.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed Class Counsel's:  (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

---

[1] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124,140 (2d Cir. 2001) (internal quotation marks omitted).

24

As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer class actions in general, and specifically, class actions involving false or misleading labeling. *See supra* at 20. And as a result of their zealous efforts in this case, proposed Class Counsel has secured substantial monetary relief to the Settlement Class Members. Thus, the Court should appoint Bursor & Fisher, P.A. and Barbat, Mansour & Suciu PLLC as Class Counsel.

## IV.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.   The Content Of The Proposed Class Notice Complies With Rule 23(c)(2).

The Court has already approved a substantially identical Proposed Notice. The only difference between the Proposed Notice here versus the Original Settlement is that the postcard notice (Exhibit D) will no longer include a tear-off claim form with return postage. Instead, the postcard notice directs class members to the Settlement Website to file claims. This minor alteration will allow for significant cost savings to the Settlement Class while still providing direct notice to approximately 80% of the Class. *See* Fraietta Decl. ¶ 32; Kanafani Decl. ¶ 2. The Settlement Administrator has estimated that this minor alteration will reduce notice costs by over $300,000. Fraietta Decl. ¶ 32.

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The content of the proposed Notice satisfies each of these requirements. It also describes the Class Counsel's expected application for attorneys' fees, and provides specific information

regarding the date, time, and place of the final approval hearing, and how to object or exclude oneself or participate in the Amended Settlement. This information is adequate to put Class Members on notice of the proposed Amended Settlement and is well within the requirements of Rule 23(c)(2)(B)

The Notice provides detailed information about the Settlement, including: 1) a comprehensive summary of its terms; 2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and an incentive award for the Named Plaintiff; and 3) detailed information about the Released Claims. Amended Agreement Exhibits B-F. In addition, the Notice provides information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information. *Id.* In short, the Media Plan is intended to fully inform Class Members of the lawsuit, the proposed Amended Settlement, and the information they need to make informed decisions about their rights. The very detailed information in this proposed notice goes well beyond the requirements of the Federal Rules. Indeed, courts have approved class notices even when they provided only general information about a settlement. *See, e.g.*, *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

Defendant's records show that roughly 80% of the sales of Premier Protein RTD Shake Products are from Costco and Sam's Club retailers. Kanafani Decl. ¶ 2. Plaintiff has subpoenaed these retailers and has obtained contact information for approximately 7.5 million potential class members. Fraietta Decl. ¶ 25.

**B.** **The Plan For Distribution Of The Class Notice Will Comply With Rule 23(c)(2)**

The Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due process. First, the Settlement Administrator will send

direct notice by email to all Settlement Class Members for whom a valid email address is identified in the retailers' or Defendant's records.  Amended Agreement ¶ 4.2(b).  The email will contain an electronic link to the online claim form.  *Id.*  Next, the Settlement Administrator will send direct notice by First Class U.S. Mail to all the Settlement Class Members who did not receive an email.  *Id.* ¶ 4.2(c).  Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice," as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online.  *Id.* ¶ 4.2(d).  Moreover, the Settlement Administrator will cause internet banner advertisements to be hosted and issue a press release.  *Id.* ¶ 4.2(e)-(f).  Finally, the Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  *Id.* ¶ 4.3(g).

In sum, the proposed methods for providing notice to the Class comports with both Rule 23 and Due Process, and thus, should be approved by the Court.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Preliminary Approval of the Amended Settlement.  A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.

Dated:  September 13, 2018

Respectfully submitted,


By:     */s/ Philip L. Fraietta*
           Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jmarchese@bursor.com
           pfraietta@bursor.com

L. Timothy Fisher (*Pro Hac Vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
           fklorczyk@bursor.com

**BARBAT, MANSOUR & SUCIU PLLC**
Nick Suciu III (*Pro Hac Vice*)
1644 Bracken Road
Bloomfield Hills, MI 48302
Telephone:  (313) 303-3472
Email:  nicksuciu@bmslawyers.com

*Proposed Class Counsel*

**CONSUMER LAW GROUP PC**
Anne Barker (*Pro Hac Vice*)
306 Joy Street
Fort Oglethorpe, GA 30742
Telephone:  (706)858-0325
Email:
Abarker.consumerlawgroup@gmail.com

*Supporting Counsel*

28