USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/2018

STATEMENT OF OBJECTIONS

Michael & Ursula Burkhalter
502 Falling Leaf Lane
Union Grove, AL 35175
(573) 528-4150

Received 12/6/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORIO V. PREMIER NUTRITION CORP.,
CASE NUMBER 17-cv-05987-AT

Statement of Objections

We are members of the plaintiff class in the case Gregorio v. Premier Nutrition Corp. We are class members because we purchased Premier Protein Ready-To-Drink Shake products in the United States between 8 August 2011 and 12 October 2018, as described in the Federal court authorized notice. **Proof of purchase documents are enclosed to establish membership in the Settlement Class.**

We object to the settlement in this lawsuit.

Our reasons for objecting are:

**1. The proposed settlement does not adequately compensate consumers who take the time to file a valid claim in a burdensome class action process:**

According to the Federal court authorized notice, the proposed settlement agreement fund is $9 million dollars, with consumers having proofs of purchase being refunded $1 per shake up to $40. Class members are being compensated on a pro rata basis, allegedly to ensure each member gets a fair share proportional to loss. According to published news articles on the World Wide Web, the Premier Protein class action settlement originally planned to offer both vouchers and cash to Class Members; however, Premier Nutrition found that the costs of notifying the Class were too great so the settlement was modified to offer cash for valid claims.

The pro rata form of compensation in this class action is unacceptable for class members who can provide proof of purchase for these products. Washington D.C. law firm Mayer Brown studied 148 Federal court class actions in 2009 and concluded the stated value of a settlement frequently, and significantly, exceeds the amount of actual money delivered to class members, mainly because claim rates are low. According to Mayer Brown, claim rates are typically under 10 percent, and regularly less than 1 percent, mainly because class members feel it's not worth their time to file claim with

modest awards. However, attorney fees are typically more substantial because many courts award attorney fees based on the stated value of the settlement. According to the Federal court notice, legal counsel for the Class will make a motion to the Court for an award of attorney's fees in a total amount not to exceed one-third of the Settlement Fund. Separately, Class Counsel will also seek payment from the Settlement Fund for their costs and expenses incurred during the course of the litigation. The pro rata concept does not constitute a "fair share proportional to loss" for class members with monetary loss above the proposed settlement agreement amount of $40.

In addition to little monetary return on investment to file, case law illustrates that class actions are typically considered complicated, and that vague instructions lead to low participation rates. In Redman v. RadioShack, Corp., 768F.3d 622 (7th Cir. 2014), the judge fittingly described the "bother of creating a claim" for which little compensation is received. With respect to Gregorio v. Premier Nutrition Corporation, the process was equally frustrating, cumbersome and the Federal court authorized notice took substantial time to review and grasp before submission. The instructions on the notice were unclear. Page 7 of the notice states written objections must be "*filed no later than December 11, 2018*", with a copy of the objection provided to Counsel for the Class and Counsel for the Defendant "*postmarked no later than December 11, 2018.*" The definition of "*file*" is not listed in the instructions, nor what "*file*" means with respect to the December 11, 2018 deadline. How does "*file by December 11, 2018*" differ from "*postmarked no later than December 11, 2018?*" We contacted the Clerk of Court via telephone on 16 November 18 and asked how to "*file*" with the court, per the instructions, but the Clerk's office could not confirm what the language meant in the instructions and we were simply told to "get the objection in as quickly as possible." Based on our personal experience, it appears the vague and burdensome process was intentional to deter class members from filing a claim. If $9 million dollars has been set aside for claims, and only 1% to 10% file a claim due to a cumbersome process, then class members who take the time to file should be compensated based on actual monetary loss.

### 2. The actual protein content, based on laboratory testing, violates United States Food and Drug Administration (FDA) guidelines, and therefore, Premier Nutrition should be held liable for all valid sums paid for the products.

Joseph Gregorio filed a class action complaint on behalf of himself, and all others similarly situated, who were impacted by false or deceptive sales practices by the defendant. The lawsuit alleges that the Premier Protein Ready-to-Drink (RTD) Shakes were shown to only contain between 26.9g and 28.34g of protein, *not* the 30g of protein specified on the label. Lab tests were provided to corroborate the findings.

Protein powders and protein shakes are considered *Class I nutrients in fortified or fabricated foods* under FDA guidelines. This guidance is located at 21 Code of Federal Regulations (CFR) 101.9. According to FDA's guidance for nutritional labeling:

*The nutrient content of the composite is at least equal to the value for that nutrient*

*declared on the label. The nutrient content identified by the laboratory analysis must be at least equal to the label value.*

The laboratory testing results for grams of protein does not "equal" the value indicated on a serving container of Premier Protein. Premier Nutrition should have to compensate class members according to each incident of deception incurred.

Food labeling litigation is not a new concept. In 2005, nonprofit consumer advocacy group Center for Science in Public Interest (CSPI) reached a settlement with Pinnacle Foods over the misleading labeling of blueberry waffles. CSPI had similar food labeling claims with General Mills, Quaker Oats, Kraft and Sara Lee, just to name a few. According to Nicole E. Negowetti, Assistant Professor of Law at Valparaiso University in Indiana, the FDA does not have the resources or authority to properly enforce label regulations. Her article "Food Labeling Litigation: Exposing Gaps in the FDA's Resources and Regulatory Authority" brings to light the extent of litigation related to labeling claims, her article details page after page of consumer products, stocked in our pantry or refrigerator right now, that have become entangled in litigation over mislabeling claims.

The deception surrounding Premier Protein labeling is a glaring violation of consumer trust and it reinforces the need for enhanced restitution beyond the settlement amount. If we buy a container of yogurt or a gallon of milk to increase protein intake in our diet, most likely the name or marketing on the front label simply says, "XYZ Yogurt" or "ABC Milk". Consumers, like us, see the wording "Premier Protein" and "30g" posted proudly on each container and we believe that the protein we're buying is, well, "premier" in substance. Premier Nutrition's marketing and labeling is the ultimate in blatant deception.

### 3. The "personal injury" to class members could not be reasonably avoided.

Mr. Gregorio claims the defendant's sales are driven by consumers seeking protein supplementation. We, in fact, purchased Premier Protein based on the high protein content and low sugar content. The product was used to supplement food nutrition with an overall diet and exercise program. Mr. Gregorio further claims "personal injury" has occurred with respect to the false and deceptive practices by Premier Nutrition Corp. In this case, the "injury" was not reasonably avoidable by consumers because consumers rely on product labeling in order to make informed purchase decisions. We assert that substantial monetary harm has occurred because our expenditure on these products were based on the product labeling that Mr. Gregorio claims is "false and deceptive." Consumers, like us, cannot reasonably avoid injury if an act or practice interferes with our ability to effectively make decisions, or to take action to avoid injury. In this case, if Premier Nutrition had properly displayed material information about the product, such as "protein content may vary between 26.9g and 28.34g", we could have made an informed decision as to whether or not we should purchase the product. When material information is modified or withheld until after the consumer has purchased the product, the consumer cannot reasonably avoid personal injury.

We purchased Premier Protein shakes based on the advertised amount of 30g of protein per serving. As a consumer, had we known the protein content varied between 26.9g to 28.34g protein, we may have made a better choice to spend money on an alternate product to save money. The act of withholding information impacted our ability to make an informed decision. Below is an illustration sample of per unit cost of Premier Protein versus other brands obtained at Sam's Club online:

| | **Sam's Club** prices online *as of* 19 Nov 18 | | | | |
|---|---|---|---|---|---|
| | **Name** | **12-Pack Cost** | **Cost Per Unit** | **Size** | **Grams of Protein** |
| #1 | Premier Protein | $ 16.66 | $ 1.39 | 11 fl. Oz. | 30 |
| #2 | Muscle Milk | $ 14.98 | $ 1.25 | 11 fl. Oz. | 25 |
| #3 | Atkins Protein-Rich Shake | $ 15.27 | $ 1.27 | 11 fl. Oz. | 15 |

Additionally, Uniform Commercial Code (U.C.C.) Article 2- Sales (2002), Part 3 for commercial goods, outlines the express warranty created by affirmation, promise, description or sample. Under UCC 2-313, "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description"; whereas "goods" means all things, including specifically manufactured goods. The label on the Premier Protein products "describes" or advertises 30g of protein per serving, this description creates a warranty between consumers and Premier Nutrition.

On a final note, perhaps if the FDA, the Federal Trade Commission, Congress, legal counsel and other governing bodies would take the necessary measures to enforce the law, versus filing litigation after litigation, these issues would be removed and the need for costly restitution would decrease, along with the occurrence of such incidents. However, Mayer Brown's report and discussion of "economic interest", with respect to class claims, may symbolize a key factor in lack of enforcement.

Respectively request the court consider our request for reimbursement of all monies paid for the Premier Protein products covered in this class action, in the amount of $902.96.

Sincerely,

Michael D. Burkhalter

Ursula L. Burkhalter



# Sam's Club

**Member Name:** Mike Burkhalter
**Membership:** 629178351
**Date:** Multiple
**Club:** Multiple

2101 SE Simple Savings Dr
Bentonville, AR 72716-0745
1-888-746-7726

| Purchased: | | Item#: | Qty | Amount | Tax | Item Description |
|---|---|---|---|---|---|---|
| 4914 | 2/22/2015 | 612115189 | 1 | 19.96 | 20 | PREMIER 100 CAL CHOC |
| 6416 | 1/18/2014 | 612115189 | 1 | 19.96 | n | PREMIER 100 CAL CHOC |
| 4914 | 3/14/2014 | 612115189 | 1 | 19.96 | n | PREMIER 100 CAL CHOC |
| 414 | 4/6/2014 | 612115189 | 1 | 19.96 | n | PREMIER 100 CAL CHOC |
| 4914 | 7/30/2016 | 611618669 | 1 | 18.98 | n | PREMIER BANANA RTD |
| 4914 | 5/3/2015 | 612797069 | 1 | 18.98 | n | PREMIER CHOC RTD |
| 4914 | 4/25/2015 | 612797069 | 1 | 18.98 | n | PREMIER CHOC RTD |
| 4914 | 4/11/2015 | 612797069 | 1 | 18.98 | n | PREMIER CHOC RTD |
| 4914 | 4/3/2015 | 612797069 | 1 | 18.98 | n | PREMIER CHOC RTD |
| 4914 | 5/3/2015 | 612797069 | 1 | 18.98 | n | PREMIER CHOC RTD |
| 4914 | 6/27/2015 | 612797069 | 1 | 18.98 | n | PREMIER CHOC RTD |
| 4914 | 5/17/2015 | 612797069 | 1 | 18.98 | n | PREMIER CHOC RTD |
| 4914 | 5/17/2015 | 612797069 | 1 | 18.98 | n | PREMIER CHOC RTD |
| 8107 | 9/1/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 4/20/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 7/22/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 6/30/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 6/1/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 6/1/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 5/19/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 5/4/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 4/20/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 6/10/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 6/17/2018 | 612797069 | 1 | 16.66 | y | PREMIER CHOC RTD |
| 8107 | 2/24/2018 | 980072489 | 1 | 29.88 | y | PREMIER POWDER VAN |
| 6416 | 9/5/2011 | 612797069 | 1 | 17.58 | n | PREMIER PROTEIN RTD |
| 6416 | 11/17/2011 | 612797069 | 1 | 17.58 | n | PREMIER PROTEIN RTD |
| 6416 | 9/16/2011 | 612797069 | 1 | 17.58 | n | PREMIER PROTEIN RTD |
| 6416 | 10/1/2011 | 612797069 | 1 | 17.58 | n | PREMIER PROTEIN RTD |
| 8107 | 6/30/2018 | 611008899 | 1 | 16.66 | y | PREMIER STRBRY RTD |
| 4914 | 7/25/2015 | 615119899 | 1 | 18.98 | n | PREMIER VAN RTD |
| 8107 | 5/19/2018 | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |

|      |           |           |   |         | |                    |
|------|-----------|-----------|---|---------|---|--------------------|
| 8107 | 6/17/2018 | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 6/10/2018 | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 9/1/2018  | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 8/5/2018  | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 4/20/2018 | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 3/17/2018 | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 4/20/2018 | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 3/17/2018 | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 8/5/2018  | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 5/4/2018  | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 8107 | 6/30/2018 | 615119899 | 1 | 16.66 | y | PREMIER VANILLA RTD |
| 4914 | 5/28/2016 | 615119899 | 1 | 16.66 | n | PREMIER VANILLA RTD |
| 4914 | 5/28/2016 | 615119899 | 1 | 16.66 | n | PREMIER VANILLA RTD |
| 4914 | 4/30/2016 | 615119899 | 1 | 16.66 | n | PREMIER VANILLA RTD |
| 4914 | 5/14/2016 | 615119899 | 1 | 16.66 | n | PREMIER VANILLA RTD |
| 4914 | 6/18/2016 | 615119899 | 1 | 16.66 | n | PREMIER VANILLA RTD |
| 4914 | 3/18/2016 | 615119899 | 1 | 16.66 | n | PREMIER VANILLA RTD |
| 4914 | 3/18/2016 | 615119899 | 1 | 16.66 | n | PREMIER VANILLA RTD |
| 4914 | 6/18/2016 | 615119899 | 1 | 16.66 | n | PREMIER VANILLA RTD |

Clerk of Court
U.S. District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

RECEIVED
DEC 06 2019
CLERK'S OFFICE



Michael Burkhalter
502 Falling Leaf Ln.
Union Grove, AL 35175

PRIORITY MAIL

U.S. POSTAGE PAID
PM 2-Day
HUNTSVILLE, AL
35808
NOV 29, 18
AMOUNT
$9.70
R2305M145311-03

EXPECTED DELIVERY DAY: 12/03/18

USPS SIGNATURE TRACKING NUMBER

9510 8115 8402 8333 3459 75

EP14H July 2013 Outer Dimension: 10 x 5

* For International shipments, the maximum weight is 4 lbs.