**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSEPH GREGORIO, individually and on behalf of all
others similarly situated,

                    Plaintiff,

    v.

PREMIER NUTRITION CORPORATION,

                    Defendant.

Civil Action No. 1:17-cv-05987-AT

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARD**

Dated:  January 3, 2019

**BURSOR & FISHER, P.A.**

Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jmarchese@bursor.com
       pfraietta@bursor.com

L. Timothy Fisher (*Pro Hac Vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
       fklorczyk@bursor.com

**BARBAT, MANSOUR & SUCIU PLLC**

Nick Suciu III (*Pro Hac Vice*)
1644 Bracken Road
Bloomfield Hills, MI 48302
Telephone:  (313) 303-3472
Email:  nicksuciu@bmslawyers.com

*Class Counsel*

[Supporting Counsel listed on signature page]

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ................................................................................................ 1

I.    MR. MAGER AND HIS COUNSEL ARE SERIAL OBJECTORS AND
      THEIR OBJECTION FAILS TO CONSIDER THE RISKS OF THIS
      LITIGATION AND SECOND CIRCUIT PRECEDENT REGARDING
      ATTORNEYS' FEE AWARDS IN CLASS ACTION LITIGATION OF
      THIS MAGNITUDE ..................................................................................... 1

      A.    Mr. Mager And His Counsel Are Serial Objectors And His
            Objection Should Be Discounted Accordingly ..................................... 1

      B.    Mr. Mager's Objection Is Meritless Because It Fails To Consider
            The Risk Of This Litigation ................................................................ 3

      C.    Mr. Mager's Objection Is Meritless Because It Fails To Address
            Second Circuit Precedent Regarding Attorneys' Fee Awards In
            Class Action Litigation Of This Magnitude ........................................ 4

II.   MR. SWEENEY IS A SERIAL OBJECTOR AS WELL AS A
      CONVICTED FELON, AND HIS OBJECTION IS FRIVOLOUS AND
      ILL-INFORMED ......................................................................................... 8

      A.    Mr. Sweeney Is A Serial Objector And His Objection Should Be
            Discounted Accordingly ..................................................................... 8

      B.    Mr. Sweeney's Objection Is Frivolous And Ill-Informed ...................... 11

III.  MR. ALEXANDER'S OBJECTION DOES NOT COMPLY WITH THE
      COURT'S PRELIMINARY APPROVAL ORDER OR RULE 23, AND
      IT IGNORES THAT THE FEE PETITION HAS BEEN READILY
      AVAILABLE FOR PUBLIC VIEWING SINCE THE DAY IT WAS
      FILED ....................................................................................................... 13

IV.   MR. HARRISON'S OBJECTION DOES NOT COMPLY WITH THE
      COURT'S PRELIMINARY APPROVAL ORDER OR RULE 23 ..................... 14

CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Asare v. Change Grp. of N.Y., Inc.*,
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ........................................................................... 6

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
2002 WL 1315603 (S.D.N.Y. June 17, 2002) ........................................................................... 5

*Barnes v. FleetBoston Fin. Corp.*,
2006 WL 6916834 (D. Mass. Aug. 22, 2006) ........................................................................... 2

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................................... 6, 7

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 (2017) ............................................................................................................. 3

*Brown v. Hain Celestial Group*,
2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ............................................................................ 9

*Bruaner v. MusclePharm Corp.*,
2015 WL 4747941 (C.D. Cal. Aug. 11, 2015) .......................................................................... 3

*Chambers v. Whirlpool*,
214 F. Supp. 3d 877 (C.D. Cal. 2016) ...................................................................................... 9

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................................................................... 2, 6

*Clark v. Ecolab, Inc.*,
2010 WL 1948198 (S.D.N.Y. May 11, 2010) .......................................................................... 6

*Dunford v. Musclepharm Corp.*,
2015 WL 9258079 (N.D. Cal. Dec. 18, 2015) .......................................................................... 3

*Famular v. Whirlpool Corp.*,
2017 WL 2470844 (S.D.N.Y. June 7, 2017) ............................................................................ 4

*Flores v. Anjost Corp.*,
2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ............................................................................. 5

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000) ....................................................................................................... 4

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
2017 WL 6729863 (S.D.N.Y. Nov. 1, 2017) ...................................................................... 9, 12

*Hayes v. Harmony Gold Min. Co.*,
2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ........................................................................ 5, 7

*Hyun v. Ippudo USA Holdings*,
 2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) ...................................................... 7

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ................................................... 8, 9

*In re Citigroup Inc. Sec. Litig.*,
 965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................. 5

*In re Credit Default Swaps Antitrust Litig.*,
 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ...................................................... 6

*In re General Elec. Co. Secs. Litig.*,
 998 F. Supp. 2d 145 (S.D.N.Y. 2014) ................................................................. 2

*In re Initial Public Offering Secs. Litig.*,
 671 F. Supp. 2d 467 (S.D.N.Y.2009) ................................................................. 6

*In re Nasdaq Market-Makers Antitrust Litig.*,
 187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................... 7

*In re Polyurethane Foam Antitrust Litigation*,
 178 F. Supp. 3d 635 (N.D. Ohio 2016) ............................................................ 8, 9

*In re Public Offering Secs. Litig.*,
 721 F. Supp. 2d 210 (S.D.N.Y. 2010) ................................................................. 2

*In re TRS Recovery Servs.*,
 2016 WL 543137 (D. Me. Feb. 10, 2016) ........................................................... 9

*In re Visa Check/Mastermoney Antitrust Litig.*,
 297 F. Supp. 2d 503 (E.D.N.Y. 2003) ............................................................... 7

*Khait v. Whirlpool Corp.*,
 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ...................................................... 6

*Larsen v. Trader Joe's Co.*,
 2014 WL 3404531 (N.D. Cal. July 11, 2014) .................................................... 8, 9

*McDonnell v. Nature's Way Prods., LLC*,
 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ....................................................... 3

*Monzon v. 103W77 Partners, LLC*,
 2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) .......................................................... 5

*Phillips Servs. Corp. Sec. Litig.*,
 2007 WL 959299 (S.D.N.Y. Mar. 28, 2007) ........................................................ 7

*Roberts v. Electrolux Home Prods., Inc.*,
 2014 WL 4568632 (C.D. Cal. Sep. 11, 2014) ...................................................... 9

*Shapiro v. JPMorgan Chase & Co.*,
 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................................... 3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................. 5, 8

*Willix v. Healthfirst, Inc.*,
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ............................................................. 6

*Zorrilla v. Carlson Restaurants Inc.*,
   2018 WL 1737139 (S.D.N.Y. Apr. 9, 2018) ......................................................... 5, 7

**STATUTES**

18 U.S.C. § 152(3) ........................................................................................................ 10

**RULES**

Fed. R. Civ. P. 23 ......................................................................................................... 14

Fed. R. Civ. P. 23(e)(5)(A) ..................................................................................... 13, 14

**OTHER AUTHORITIES**

Managing Class Action Litigation: A Pocket Guide for Judges, by Barbara J. Rothstein &
   Thomas E. Willging, Federal Judicial Center, p.11 (2005) ........................................ 2

## INTRODUCTION

On November 5, 2018, Plaintiff filed his Motion For Attorneys' Fees, Costs, Expenses, And Incentive Award (the "Fee Petition") pursuant to the First Amended Class Action Settlement ("Amended Settlement") in this action.  *See* ECF No. 80.  As detailed in the Motion For Final Approval Of Class Action Settlement filed herewith, the reaction of the Settlement Class to the Amended Settlement has been overwhelmingly positive.  Of the approximately 9,362,854 total Settlement Class Members, only 4 (or approximately 0.00004%) objected to the Fee Petition.[1]

The objections are meritless.  Two of the objections are by serial objectors and simply make boilerplate objections that ignore relevant Second Circuit precedent and the unique circumstances of this case.  The other two are by *pro se* objectors and fail to include any facts or legal bases in support of the objections.  For the following reasons, the Court should overrule the objections and grant the Fee Petition in its entirety.

**I.    MR. MAGER AND HIS COUNSEL ARE SERIAL OBJECTORS AND THEIR OBJECTION FAILS TO CONSIDER THE RISKS OF THIS LITIGATION AND SECOND CIRCUIT PRECEDENT REGARDING ATTORNEYS' FEE AWARDS IN CLASS ACTION LITIGATION OF THIS MAGNITUDE**

**A.    Mr. Mager And His Counsel Are Serial Objectors And His Objection Should Be Discounted Accordingly**

On December 11, 2018, Mr. Dave Mager, through counsel Mr. George W. Cochran, filed an objection to the Fee Petition.  *See* ECF No. 91 ("Mager Obj.").  Both Mr. Mager and Mr. Cochran are serial objectors.  *See* https://www.serialobjector.com/persons/91 (listing 10 settlements to which Mr. Cohran has served as objector's counsel);

---

[1] Two of those objections – by Mr. Paul Alexander and Mr. John Harrison – were improperly submitted, as they were mailed to the Settlement Administrator, rather than the Court, Class Counsel, and Defendant's Counsel, as is required by the Preliminary Approval Order.  *See* 9/14/18 Order, ECF No. 77 ¶ 23; 12/28/18 Declaration of Orran Brown, Sr. ¶ 34, Ex. 15 ("Alexander Obj." and "Harrison Obj.").  They should be overruled accordingly.

https://www.serialobjector.com/persons/295 (listing 2 settlements to which Mr. Mager has

objected).  "Serial" or "professional" objectors file objections merely to extort payments from

parties or their counsel:

> Repeat objectors to class action settlements can make a living
> simply by filing frivolous appeals and thereby slowing down the
> execution of settlements. The larger the settlement, the more cost-
> effective it is to pay the objectors rather than suffer the delay of
> waiting for an appeal to be resolved (even an expedited appeal).
> Because of these economic realities, professional objectors can
> levy what is effectively a tax on class action settlements, a tax that
> has no benefit to anyone other than to the objectors. Literally
> nothing is gained from the cost: Settlements are not restructured
> and the class, on whose behalf the appeal is purportedly raised,
> gains nothing.

*In re General Elec. Co. Secs. Litig.*, 998 F. Supp. 2d 145, 152 (S.D.N.Y. 2014) (Cote, J.)

(quoting *Barnes v. FleetBoston Fin. Corp*., 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006));

*see also In re Public Offering Secs. Litig.*, 721 F. Supp. 2d 210, 215 (S.D.N.Y. 2010)

(Scheindlin, J.) ("[P]rofessional objectors undermine the administration of justice by disrupting

the settlement in hopes of extorting a greater share of the settlement for themselves and their

clients."); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *2 (S.D.N.Y. May 9,

2014) ("I have little time for 'professional objectors.'") (McMahon, J.).  Judges are cautioned to

"[w]atch out…for canned objections filed by professional objectors who seek out class actions to

simply extract a fee by lodging generic, unhelpful protests."  *Managing Class Action Litigation:

A Pocket Guide for Judges*, by Barbara J. Rothstein & Thomas E. Willging, Federal Judicial

Center, p. 11 (2005).

In recognition of the potential for serial objectors, the Court's Preliminary Approval

Order requires that "[i]f a Settlement Class Member or any of the Objecting Attorneys has

objected to any class action settlement where the objector or the Objecting Attorneys asked for

or received any payment in exchange for dismissal of the objection, or any related appeal,

without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption."  9/14/18 Order, ECF No. 77 ¶ 21.  Nonetheless, Mr. Mager and his counsel do not disclose to the Court that they have objected to numerous class action settlements.  Mr. Mager's objection should be discounted accordingly.

**B.    Mr. Mager's Objection Is Meritless Because It Fails To Consider The Risk Of This Litigation**

Mr. Mager argues that "Class Counsel should receive a fee of no more than $1.8 million, or 20% of the total cash value of this settlement," because this lawsuit was "low-risk."  Mager Obj. at 1.  That is incorrect.  As detailed in the Fee Petition, this litigation was not "low-risk." *See* 11/5/18 Declaration of Philip L. Fraietta In Support of Plaintiff's Motion For Attorneys' Fees, Costs, Expenses, And Incentive Award, ECF No. 81 ("11/5/18 Fraietta Decl.") ¶ 44.  "It is well settled that class actions are notoriously complex and difficult to litigate."  *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014).  This case was no exception.  At the time of settlement, Defendant had filed a motion to dismiss arguing that Plaintiff's claims were preempted by the Food, Drug, and Cosmetics Act ("FDCA").  *See* ECF No. 37 at 16-21.  Defendant's argument had not been addressed by the Second Circuit, but it had been accepted by other federal courts in substantially similar actions.  *See, e.g.*, *Dunford v. Musclepharm Corp.*, 2015 WL 9258079, at *4 (N.D. Cal. Dec. 18, 2015); *Bruaner v. MusclePharm Corp.*, 2015 WL 4747941, at *9 (C.D. Cal. Aug. 11, 2015).  Thus, there was substantial risk that the Court would have found that Plaintiff's claims were preempted, and the Settlement Class would have recovered nothing.

Moreover, Defendant's motion to dismiss also argued that the Court lacked personal jurisdiction over it as to non-New York class members and claims under *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) and similar case law.  *See* ECF No. 37 at 11-15; *see also, e.g.*, *McDonnell v. Nature's Way Prods., LLC*, 2017 WL 4864910, at *3-4

(N.D. Ill. Oct. 26, 2017) (dismissing claims of non-Illinois putative class members brought by an Illinois resident); *Famular v. Whirlpool Corp.*, 2017 WL 2470844, at \*5-6 (S.D.N.Y. June 7, 2017) (finding the court lacked personal jurisdiction over non-resident defendants in a putative class action). This argument also had not been considered by the Second Circuit. Thus, there was substantial risk that the Court would have found that it lacked personal jurisdiction over Defendant as to non-New York class members and claims. Such a ruling would have prevented any recovery from residents of the other states and territories, including Mr. Mager, who purportedly purchased Premier Protein Shakes in Ohio. *See* Mager Obj. at 1.

Further, even if Plaintiff survived Defendant's motion to dismiss, he would have faced significant risk in certifying a litigation class, and in defeating Defendant's eventual motion for summary judgment. 11/5/18 Fraietta Decl. ¶ 44. Class Counsel was cognizant of these risks at the time of settlement, and thus recognized that a more proximate and certain monetary benefit was far superior to the Class than continued litigation. *Id.* ¶¶ 43-44. Mr. Mager's Objection does not address any of these risks and should therefore be overruled in its entirety.

### C. Mr. Mager's Objection Is Meritless Because It Fails To Address Second Circuit Precedent Regarding Attorneys' Fee Awards In Class Action Litigation Of This Magnitude

Mr. Mager's objection ignores clear Second Circuit precedent favoring the percentage of the fund method, and routinely awarding attorneys' fees equal to one-third of the settlement fund in class action cases of this magnitude. Rather, he baselessly asserts that "[n]othing in the record justifies a fee beyond the minimum necessary," and that "[t]his is nowhere near the level of risk and pre-trial activity required to justify awarding one-third of the common fund for Class Counsel's efforts." Mager Obj. at 2-3. That is wrong. As detailed in the Fee Petition, courts in the Second Circuit apply one of two fee calculation methods – the "percentage of the fund" method or the "lodestar" method. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50

(2d Cir. 2000). "The trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015) (Torres, J.). In fact, the "trend" of using the percentage of the fund method to compensate class counsel is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013). As the Second Circuit has stated, the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). "In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'" *Id.* (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)).

Moreover, as this Court has stated, "Courts in this Circuit routinely approve fee awards in class actions that constitute one-third of the settlement fund." *In re Tommie Copper Prods. Consumer Litig.*, Case No. 7:15-cv-03183-AT-LMS, ECF No. 130 at 14:13-15 (S.D.N.Y. May 1, 2018) (Torres, J.); *see also Zorrilla v. Carlson Restaurants Inc.*, 2018 WL 1737139, at *2 (S.D.N.Y. Apr. 9, 2018) (Torres, J.) (awarding "$6,336,666.67, or one-third of the Gross Settlement Amount, for attorneys' fees"); *Flores v. Anjost Corp.*, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (Torres, J.) (awarding attorneys' fees equal to one-third of the settlement fund); *Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund),

*aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award, and noting that "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y.2009) (awarding one-third of the $510 million net settlement fund); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund).

Mr. Mager's argument that a lodestar multiplier of 4.88 is "absurd and excessive" is also not supported by precedent.  Rather, that multiplier is well within the accepted range in this Circuit.  *See Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (approving attorneys' fees of 33% of a $4.9 million common fund, representing a 6.3 times multiplier on Class Counsel's regular hourly rates); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving attorneys' fees of $253,758,000, which reflected a "lodestar multiplier of just over 6"); 11/5/18 Fraietta Decl. Ex. L, *TMBI* Hearing Tr. at 18:4-17 (approving attorneys' fees of one-third of an $8.225 million common fund, representing an 11.7 times multiplier on Class Counsel's regular hourly rates).  Again, Mr. Mager's objection does not address any of this authority.

Moreover, as courts in this District have noted, a higher multiplier "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where, as here, the

settlement amount was substantial." *Beckman*, 293 F.R.D. at 482; *Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("In this case, where the parties were able to settle relatively early and before any depositions occurred ... the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement' ... is appropriate.").

Mr. Mager primarily relies on *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) and *In re Phillips Servs. Corp. Sec. Litig.*, 2007 WL 959299 (S.D.N.Y. Mar. 28, 2007), but both cases are inapposite because both cases involved settlement funds and fee requests that were significantly larger than that at issue here.  In *In re Visa Check*, the settlement was for more than $3 billion, and Class Counsel sought more than $600 million in attorneys' fees.  *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 at 507, 522.  And in *In re Phillips*, the settlement fund was for $79.75 million, and Class Counsel sought more than $26 million in attorneys' fees.  *See In re Phillips Servs. Corp. Sec. Litig.*, 2007 WL 959299, at *1.  The difference is meaningful because "absent unusual circumstances, the percentage will decrease as the size of the fund increases" and thus "[i]n cases where a class recovers more than $75-$200 million … fees in the range of 6-10 percent and even lower are common." *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998). That principle does not apply in cases with settlement funds around $9 million like this one. *See, e.g.*, *Zorrilla*, 2018 WL 1737139, at *2 (awarding "$6,336,666.67, or one-third of the Gross Settlement Amount, for attorneys' fees"); *Hayes*, 2011 WL 6019219, at *1 (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award, and noting that "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class").

In sum, Mr. Mager asks this Court to reduce Class Counsel's fee award to 20% of the Settlement Fund while ignoring all Second Circuit precedent to the contrary.  Doing so would be in direct contradiction with the Second Circuit's guidance in *Wal-Mart Stores* as it would lead to an absurd result where Class Counsel is penalized for recognizing substantial risks to the Settlement Class and negotiating a $9 million cash common fund settlement that will make the vast majority of Settlement Class Members more than whole – rather than continuing to litigate and risking no recovery at all.  *See, e.g.*, *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (2d Cir. 2005) (finding that the percentage of the fund method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").  The Court should therefore overrule Mr. Mager's objection in its entirety.

## II.    MR. SWEENEY IS A SERIAL OBJECTOR AS WELL AS A CONVICTED FELON, AND HIS OBJECTION IS FRIVOLOUS AND ILL-INFORMED

### A.    Mr. Sweeney Is A Serial Objector And His Objection Should Be Discounted Accordingly

On November 20, 2018, Mr. Patrick S. Sweeney filed a *pro* se objection to the Amended Settlement, which includes arguments regarding the Fee Petition.  *See* ECF No 89 ("Sweeney Obj.").  Like Mr. Mager and his counsel, "Mr. Sweeney is a serial objector."  *In re Carrier IQ, Inc., Consumer Privacy Litig*., 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *7 n. 4 (N.D. Cal. July 11, 2014) (same).  And like Mr. Mager and his counsel, Mr. Sweeney fails to inform the Court that he has objected to over 50 class action settlements in the past.  *See* Declaration Of Philip L. Fraietta In Support Of Plaintiff's Motion For Final Approval Of First Amended Class Action Settlement ("1/3/19 Fraietta Decl."), Ex. D, Deposition of Patrick Sweeney ("Sweeney Dep.") at 112:22-113:8.

As was detailed in the Parties' joint letter-motion to take discovery of Mr. Sweeney (ECF No. 87), Mr. Sweeney has been criticized by numerous courts across the country.  In *In re*

*Polyurethane Foam Antitrust Litigation*, 178 F. Supp. 3d 635 (N.D. Ohio 2016), for example, Judge Jack Zouhary described Mr. Sweeney as having "shown bad faith and vexatious conduct, both in prior cases and in this action, in the pursuit of a payoff." *Id.* at 640.  Judge Zouhary further declared that the conduct of Mr. Sweeney and the other objectors "resembles scavenger ants on a jelly roll, scrambling to extort money from the approved settlements." *Id.*  Other courts have similarly criticized Mr. Sweeney.  *See, e.g.*, *Chambers v. Whirlpool*, 214 F. Supp. 3d 877, 890, n.7 (C.D. Cal. 2016) (noting that Mr. Sweeney is "prolific in objecting to class action settlements" and "well-known for routinely filing meritless objections to class action settlements for the purpose of extracting a fee rather than to benefit the Class"); *Roberts v. Electrolux Home Prods., Inc.*, 2014 WL 4568632, at *12-15 (C.D. Cal. Sep. 11, 2014) (holding that "[t]he Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class, and finds that they are meritless in all respects."); *In re TRS Recovery Servs.*, 2016 WL 543137, at *6, n.16 (D. Me. Feb. 10, 2016) (overruling Sweeney's objection and stating his "listed objections are without merit and appear to be a form document"); *In re Carrier IQ, Inc.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (overruling objection by Mr. Sweeney and labeling him a "serial objector" who lacked standing to object because the phone number he "provided on his claim form was actually the same number his wife, Pamela Sweeney, previously swore was hers in another case."); *Brown v. Hain Celestial Group*, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) (noting that Mr. Sweeney is a "professional objector"); *Larsen*, 2014 WL 3404531, at *7 (overruling objections and recognizing that "attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings"); *Martin v. Global Marketing Research Services, Inc.*, Case No. 6:14-cv-01290-GAP-KRS, ECF No. 139, at 2 (M.D. Fla. Nov. 4, 2016) ("Finally, the Court finds that the objection filed by Patrick Sweeney is frivolous and without merit."); *Goldemberg v.*

9

*Johnson & Johnson Consumer Cos.*, 2017 WL 6729863, at *3 (S.D.N.Y. Nov. 1, 2017) (Román, J.) (finding that Mr. Sweeney's wife is a "serial professional objector to class settlements, raising serious concerns as to the legitimacy of both [her] arguments and [her] motives").

Indeed, Mr. Sweeney's deposition testimony makes clear that his objection is made merely to extract a fee from the Parties.  Mr. Sweeney testified:

> Q:   What percentage of that savings do you think you would
>       deserve?
>
> …
>
> A:   If 33 and a third is good for the goose, 33 and a third is
>       good for the gander.  …

Sweeney Dep. at 112:1-10.

Mr. Sweeney is also a convicted felon.  On July 21, 2017, Mr. Sweeney pled guilty to a violation of 18 U.S.C. § 152(3) for bankruptcy fraud.  *See* ECF No. 87-3 (11/22/17 Judgment in a Criminal Case).  Mr. Sweeney committed bankruptcy fraud when he falsely listed embezzled funds from three companies, Fairview Ridge, LLC; Fairview Ridge II, LLC; and Fairview Ridge III, LLC, as "loans to debtor" after he filed for bankruptcy in 2013.  *See* ECF No. 87-4 (7/12/17 Indictment of Patrick S. Sweeney).  As part of Mr. Sweeney's plea deal, he was sentenced to five-years probation and ordered to pay restitution in the amount of $481,970.  *See* ECF No. 87-3 at 6.  At the sentencing hearing, Judge James Peterson stated that Mr. Sweeney "deserved a prison sentence" but instead received probation due to the needs of Mr. Sweeney's disabled son.  *See* ECF No. 87-5 (11/17/17 WSJ Article).

Further highlighting his lack of credibility, Mr. Sweeney admitted at his deposition that his objection falsely stated that he had filed a claim at the time it was submitted:

> Q:   Okay.  Can you – again, going back to the last line on the
>       first page [of your objection] where you said you have filed
>       a claim via electronic claim form; is that true?

A:      I don't think it was true when I wrote this.  …

Sweeney Dep. at 52:19-24; *see also* Declaration of Orran L. Brown, Jr. Regarding Objection Of

Patrick S. Sweeney, ECF No. 87-2 ¶ 5 ("As of the date of this Declaration, we have received 34

claims from individuals with the last name 'Sweeney,' but, according to the data provided by

these claimants on their claim forms, none has the first name 'Patrick,' nor does any have the

mailing address or email address that Mr. Sweeney provided.").

As a result, the Court should discount Mr. Sweeney's objection.

**B.      Mr. Sweeney's Objection Is Frivolous And Ill-Informed**

Mr. Sweeney's objection in this case consists of nearly identical arguments from a

multitude of other objections that he filed in the past.  In fact, it appears that Mr. Sweeney has

simply cut-and-pasted from his prior objections in other cases as virtually all of his grounds for

objecting are word-for-word identical to objections he has made in other cases.  *See* ECF No. 87-

6 (collection of Mr. Sweeney's objections in other cases).

Even taken at face value, Mr. Sweeney's objections to the Fee Petition are wholly

without merit.  First, Mr. Sweeney complains that because the "[c]laims administration process

fails to require reliable future oversight, accountability and reporting about whether the claims

process actually delivers what was promised[,] … it would obviously be more prudent to

withhold a portion of Class Counsel's fee until the entire distribution process is complete."

Sweeney Obj. at 2-3 ¶¶ 1 & 3.  But that statement is false.  In the proposed final approval order,

the Court "retain[s] jurisdiction over all matters relating to administration, consummation,

enforcement, and interpretation of the Amended Settlement Agreement."  [Proposed] Final

Judgment And Order Of Dismissal With Prejudice ¶ 19.  In other words, if Class Counsel and the

Parties do not implement the settlement as they have promised, this Court retains jurisdiction

over them to enforce its order approving the settlement.  In addition, Class Counsel is highly

11

experienced and has implemented and overseen dozens of settlements without problem or complaint. *See* 1/3/19 Fraietta Decl., Ex. B (Bursor & Fisher, P.A. Firm Resume). There is no basis to conclude that anything different will happen here.

Next, Mr. Sweeney argues that "[a]ttorney fees do not depend upon how much relief is actually paid to the Class Members." Sweeney Obj. at 3 ¶ 4. However, Class Counsel has negotiated a common fund settlement where no portion of the fund will revert back to Defendant under any circumstances, and their attorneys' fees will be paid out of that fund. As such, Class Counsel's fees <u>do</u> depend upon how much relief is paid to the Class. Class Counsel have requested one-third of the $9 million settlement fund because of the extraordinary results they have achieved in this case. Indeed, at his deposition Mr. Sweeney admitted that Class Counsel secured an extraordinary result:

> Q:   What about this case?
>
> A:   Well, there's a significance about – a significant amount of money you guys got either the insurance company for the defendant or the defendant to write some pretty big checks, and that's good. Good job. That's why you guys are getting a lot of money. That's good.

Sweeney Dep. at 110:5-11.

Finally, Mr. Sweeney argues that the "fee calculation is unfair in that the percentage of the settlement amount is far too high." Sweeney Obj. at 3 ¶ 5. In support, Mr. Sweeney argues that "[a]fter a review of the Docket there appears to be only 85 Docket Entries." *Id.* As with Mr. Mager, Mr. Sweeney ignores that "Courts in this Circuit routinely approve fee awards in class actions that constitute one-third of the settlement fund." *In re Tommie Copper Prods. Consumer Litig.*, Case No. 7:15-cv-03183-AT-LMS, ECF No. 130 at 14:13-15; *see also* supra §§ I.B-C. Of course, there is no authority in the Second Circuit or anywhere in the United States of America adopting a methodology of reviewing attorneys' fees requests by counting the number of docket

12

entries.  Indeed, while Mr. Sweeney has objected to over 50 class action settlements in the past, *see* Sweeney Dep. at 112:22-113:8, he admits that he has never seen a court adopt his proposed methodology.  *Id.* at 107:1-5 ("Q:  Okay.  Mr. Sweeney, have you ever seen a court conduct a lodestar crosscheck using the number of docket entries or the amount of fee per docket entry anywhere in that calculation?  A:  No, I haven't seen … .").

> The Court should therefore overrule Mr. Sweeney's objection in its entirety.

## III.   MR. ALEXANDER'S OBJECTION DOES NOT COMPLY WITH THE COURT'S PRELIMINARY APPROVAL ORDER OR RULE 23, AND IT IGNORES THAT THE FEE PETITION HAS BEEN READILY AVAILABLE FOR PUBLIC VIEWING SINCE THE DAY IT WAS FILED

As aforementioned, Mr. Alexander's objection was improperly submitted and should be overruled accordingly.  *See supra* at 1 n.1.  However, even if the Court considers Mr. Alexander's objection, it should be overruled for failure to comply with Rule 23 and the Court's Preliminary Approval Order, and also because it is meritless.

Mr. Alexander seemingly objects to the Fee Petition by arguing that "the short period of time given in reference to Gregorio v. Premier Nutrition Corp., is unfair," and a "more responsible objection to the legal fees is impossible.  Not to mention outrageous."  Alexander Obj. at 1.  As an initial matter, pursuant to Fed. R. Civ. P. 23(e)(5)(A), an objection to a class action settlement must "state with specificity the grounds for the objection."  The Court's Preliminary Approval Order similarly required that objections include "the facts supporting the objection, and the legal grounds on which the objection is based."  9/14/18 Order, ECF No. 77 ¶ 21.  Mr. Alexander's objection fails to comply with these requirements, and it should therefore be overruled.

Moreover, even if the Court excuses the procedural infirmities of Mr. Alexander's objection, it should be overruled as it is wholly without merit.  Contrary to Mr. Alexander's objection, the Settlement Class was given ample time to object to the Fee Petition.  Pursuant to

the Court's Preliminary Approval Order, Class Counsel filed the Fee Petition on November 5, 2018, and all papers in support of the Fee Petition were posted to the Settlement Website for public viewing that same day. *See* 1/3/19 Brown Decl. ¶ 8. Settlement Class Members then had five weeks, until December 11, 2018, to submit timely objections. *See* 9/14/18 Order, ECF No. 77 ¶ 16.

The Court should therefore overrule Mr. Alexander's objection in its entirety.

## IV.   MR. HARRISON'S OBJECTION DOES NOT COMPLY WITH THE COURT'S PRELIMINARY APPROVAL ORDER OR RULE 23

Mr. Harrison's objection suffers from the same procedural infirmities as Mr. Alexander's objection. As aforementioned, Mr. Harrison's objection was improperly submitted, and should therefore be overruled. *See supra* at 1 n.1. However, even if the Court considers Mr. Harrison's objection, it should be overruled for failure to comply with Rule 23 and the Court's Preliminary Approval Order.

Mr. Harrison seemingly objects to the Fee Petition by stating "I John Harrison wishes to the [sic] object to the settlement to class counsel's application for attorney's fees, costs, expenses and/or incentive awards." Harrison Obj. at 1. Like Mr. Alexander, Mr. Harrison does not "state with specificity the grounds for the objection." Fed. R. Civ. P. 23(e)(5)(A). Nor does he include "the facts supporting the objection, and the legal grounds on which the objection is based." 9/14/18 Order, ECF No. 77 ¶ 21. The Court should therefore overrule Mr. Harrison's objection in its entirety.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court overrule all objections to the Fee Petition, and (1) approve attorneys' fees, costs, and expenses in the amount of one-third of the settlement fund, or $3,000,000.00, (2) grant Mr. Gregorio an incentive award of $5,000 in recognition of his efforts on behalf of the class, and (3) award such other and further

relief as the Court deems reasonable and just.

Dated:  January 3, 2019

Respectfully submitted,

By:    */s/ Philip L. Fraietta*
Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jmarchese@bursor.com
pfraietta@bursor.com

L. Timothy Fisher (*Pro Hac Vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
fklorczyk@bursor.com

**BARBAT, MANSOUR & SUCIU PLLC**
Nick Suciu III (*Pro Hac Vice*)
1644 Bracken Road
Bloomfield Hills, MI 48302
Telephone:  (313) 303-3472
Email:  nicksuciu@bmslawyers.com

*Class Counsel*

**CONSUMER LAW GROUP PC**
Anne Barker (*Pro Hac Vice*)
306 Joy Street
Fort Oglethorpe, GA 30742
Telephone:  (706)858-0325
Email:
Abarker.consumerlawgroup@gmail.com

*Supporting Counsel*

15