**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSEPH GREGORIO, individually and on behalf of all others similarly situated,

                Plaintiff,

    v.

PREMIER NUTRITION CORPORATION,

                Defendant.

Civil Action No. 1:17-cv-05987-AT

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF FIRST AMENDED CLASS ACTION SETTLEMENT**

Dated:  January 3, 2019

**BURSOR & FISHER, P.A.**

Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jmarchese@bursor.com
       pfraietta@bursor.com

L. Timothy Fisher (*Pro Hac Vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
      fklorczyk@bursor.com

**BARBAT, MANSOUR & SUCIU PLLC**

Nick Suciu III (*Pro Hac Vice*)
1644 Bracken Road
Bloomfield Hills, MI 48302
Telephone:  (313) 303-3472
Email:  nicksuciu@bmslawyers.com

*Proposed Class Counsel*

[Supporting Counsel listed on signature page]

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 2

    A.    Plaintiff's Allegations ................................................................................. 2

    B.    The Litigation History And Settlement Discussions ................................. 3

TERMS OF THE AMENDED SETTLEMENT ................................................................. 6

    A.    Class Definition .......................................................................................... 6

    B.    Monetary Relief ......................................................................................... 7

    C.    Injunctive Relief ........................................................................................ 7

    D.    Release ........................................................................................................ 7

    E.    Notice And Administration Expenses ......................................................... 7

    F.    Incentive Award ......................................................................................... 8

    G.    Attorneys' Fees And Expenses .................................................................. 8

ARGUMENT ....................................................................................................................... 8

    I.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
          APPROPRIATE ......................................................................................... 8

          A.    Numerosity ...................................................................................... 9

          B.    Commonality ................................................................................... 9

          C.    Typicality ...................................................................................... 10

          D.    Adequacy ...................................................................................... 11

          E.    The Proposed Settlement Class Is Ascertainable ......................... 13

          F.    The Proposed Settlement Class Meets the Requirements of
              Rule 23(b)(3) ................................................................................ 13

              1.    Common Questions Predominate ...................................... 14

              2.    A Class Action Is A Superior Mechanism ....................... 15

    II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ................. 16

    III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE,
          AND ADEQUATE AND SHOULD BE APPROVED BY THE
          COURT ................................................................................................... 18

          A.    The Proposed Amended Settlement Is Procedurally Fair
              (Fed. R. Civ. P. 23(e)(B)(2)(B)) .................................................. 19

          B.    The Proposed Settlement Is Substantively Fair ........................... 20

              1.    Litigation Through Trial Would Be Complex,
                  Costly, And Long (Fed. R. Civ. P. 23(e)(2)(C)(i)
                  and *Grinnell* Factor 1) ..................................................... 21

              2.    The Reaction Of The Class Is Overwhelmingly
                  Positive (Fed. R. Civ. P. 23(e)(2)(C)(ii) and
                  *Grinnell* Factor 2) ........................................................... 22

3.      Discovery Has Advanced Far Enough To Allow
        The Parties To Responsibly Resolve The Case
        (*Grinnell* Factor 3) ............................................................................ 23

4.      The Continued Litigation Risks Related To
        Establishing Liability, Damages, And Maintaining
        A Class Action Through Trial Support Settlement
        (Fed. R. Civ. P. 23(e)(2)(C)(i) and *Grinnell* Factors
        4, 5, And 6) ...................................................................................... 24

5.      Defendant Probably Could Withstand A Greater
        Judgment (*Grinnell* Factor 7) .......................................................... 25

6.      The Settlement Amount Is Reasonable In Light Of
        The Possible Recovery And The Attendant Risks Of
        Litigation (Fed. R. Civ. P. 23(e)(2)(C)(i) and
        *Grinnell* Factors 8 And 9) ............................................................... 25

IV.     THE OBJECTIONS TO THE AMENDED SETTLEMENT AND
        MERITLESS AND SHOULD BE OVERRULED ................................................. 27

A.      The Objections To The Class Action Settlement Process
        Are Ill-Informed And Meritless .................................................................. 28

B.      The Objections To The Cash Awards Made Available By
        The Amended Settlement Are Meritless Because The Vast
        Majority Of Claimants Will Be Made Whole For Their
        Damages ................................................................................................... 29

CONCLUSION ....................................................................................................... 30

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010) ......................................................... 10

*Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
  271 F. App'x 41 (2d Cir. 2008) .............................................................................. 17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................................... 14, 16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ..................................................................................... 12

*Beckman v. Keybank, N.A.*,
  2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) ......................................................... 16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ..................................................................................... 9

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................. 20, 21, 22, 26

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ....................................................................................... 9

*Dupler v. Costco Wholesale Corp.*,
  249 F.R.D. 29 (E.D.N.Y. 2008) .............................................................................. 10

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ..................................................... 11, 12, 13, 15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................................ 16

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................ 18, 25, 26

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .......................................................... 26

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ............................................................................. 11, 15

*Hanlon v. Chrysler*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................ 23

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) ........................................................... 15

*Heerwagen v. Clear Channel Commc'ns*,
    435 F.3d 219 (2d Cir. 2006)..................................................................... 14

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d. Cir. 2012) ............................................................. 13, 14

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................... 21, 24, 25

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................... 19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................... 16

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................. 22

*In re Petrobas, Sec.*,
    862 F.3d 250 (2d Cir. 2017)................................................................. 13

*In re Prudential Insur. Sales Practices Litig.*,
    962 F.Supp. 450 (D.N.J. 1997) ............................................................ 15

*In re Public Offering Secs. Litig.*,
    721 F. Supp. 2d 210 (S.D.N.Y. 2010)............................................ 27, 29

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ..................................................... 11, 13

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)............................. 20, 22, 24

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) ............................................................... 27

*Krueger v. N.Y. Tel. Co.*,
    163 F.R.D. 433 (S.D.N.Y. 1995) ........................................................... 9

*Malchman v. Davis*,
    706 F.3d 426 (2d Cir. 1983)................................................................ 19

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ........................................................... 9, 10

*Massiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. 2012)..................................................... 23

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)................................................................ 20

*Michalow v. E. Coast Restoration & Consulting Corp.*,
    2011 WL 6942023 (E.D.N.Y. Nov. 17, 2011)...................................... 10

*Monaco v. Stone*,
    187 F.R.D. 50 (E.D.N.Y. 1999) ............................................................... 10

*Morris v. Affinity Health Plan*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ...................................................... 16

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ..................................................................... 26

*PaineWebber*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................. 24

*Rapoport-Hecht v. Seventh Generation, Inc.*,
    2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017) ........................................... 15

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015) ...................................................... 14

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ................................................................ 9, 11

*Rodriguez v. It's Just Lunch, Intern.*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ............................................................. 14

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986) ..................................................................... 14

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) .......................................................... 21

*Tiro v. Public House Invs., LLC*,
    2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ......................................... 18

*Torres v. Gristede's Oper. Corp.*,
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) .......................................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................ 17, 19

*Weigner v. City of N.Y.*,
    852 F.2d 646 (2d Cir. 1988) ..................................................................... 17

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008) ................................................................... 10

## STATUTES

21 U.S.C. § 343(a)(1) ...................................................................................... 3

N.Y. U.C.C. § 2-714(b) ................................................................................... 30

## RULES

Fed. R. Civ. P. 8 .............................................................................................. 22

Fed. R. Civ. P. 12(b)(6)................................................................................................. 22

Fed. R. Civ. P. 23........................................................................................................ 13, 14

Fed. R. Civ. P. 26........................................................................................................ 4, 19

## OTHER AUTHORITIES

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) .......................... 20

**INTRODUCTION**

On September 14, 2018, this Court preliminarily approved the First Amended Class Action Settlement (the "Amended Settlement") between Plaintiff Joseph Gregorio ("Plaintiff") and Defendant Premier Nutrition Corporation ("Defendant" or "Premier") and directed that notice be sent to the Settlement Class. 9/14/18 Order, ECF No. 77. The settlement administrator, BrownGreer PLC ("BrownGreer") has implemented the Court-approved notice plan and direct notice has reached the vast majority of the certified Settlement Class. The reaction from the Class has been overwhelmingly positive. As of December 27, 2018, 246,438 unique claims were submitted. Only 7 purported Settlement Class members have objected and only 135 requested to be excluded, representing approximately 0.00007% and 0.001% of the Settlement Class, respectively.

The Amended Settlement provides significant economic relief in the form of cash payments to Settlement Class Members. Specifically, Settlement Class Members who submit a claim along with Proof of Purchase will receive a cash award subject to an estimated cap of $34.40 after *pro rata* adjustment based on claims volume, or $0.86 per Shake. Class members without proof of purchase are eligible to receive a cash award subject to an estimated cap of $17.20 after *pro rata* adjustment based on claims volume, or $0.43 per Shake. As a result, the vast majority of claimants are being made more than whole. *See infra* § IV.B. Indeed, even assuming an aggressive damages calculation, an individual with proof of purchase would had to have purchased more than 247 Shakes to reach $34.40 in actual damages. *See id.* Similarly, an individual without proof of purchase would had to have purchased more than 123 Shakes to reach $17.20 in actual damages. *See id.*

Thus, it is clear that the Amended Settlement reflects an excellent resolution of the Parties' respective claims and defenses, and is fair and reasonable. The Amended Settlement is

also the product of extensive arm's-length negotiations between experienced attorneys familiar

with the legal and factual issues of this case, and was reached with the assistance and at the

recommendation of a highly respected and experienced class action mediator, Martin Quinn,

Esq. of JAMS San Francisco.

For these reasons, and as explained further below, the Amended Settlement is fair,

reasonable, and adequate, and warrants this Court's final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Allegations

On August 8, 2017, Plaintiff Gregorio commenced this putative class action in the United

States District Court for the Southern District of New York against Premier Nutrition

Corporation, captioned *Gregorio v. Premier Nutrition Corporation*, Case No. 17-cv-05987-AT.

Defendant formulates, manufactures, advertises and sells the popular "Premier Protein" branded

ready-to-drink ("RTD") protein shakes throughout the United States, including in New York.

Plaintiff alleges that Defendant marketed its RTD Shakes in a systematically misleading manner

by misrepresenting that its RTD Shakes had specific amounts of protein that they did not in fact

contain (the "Misrepresentations").  Plaintiff's Second Amended Complaint ("SAC") ¶ 1, ECF

No. 50.

Because Defendant's sales are driven by consumers seeking protein supplementation,

Defendant prominently displays the total protein content of its RTD Shakes on the front and back

of each product's label.  *Id.* ¶ 2.  Plaintiff further alleges that Defendant labels and advertises its

RTD Shakes in a manner that highlights the amount of added protein contained within.  Each

Product lists its respective protein content on each Product's front label, directly below the title

of the Product, as well as on the back nutritional label.  *See* Declaration of Hanny Kanafani

("Kanafani Decl."), ECF No. 54, ¶ 3.  Such representations constitute an express warranty

regarding the RTD Shakes' protein content. SAC ¶ 9. Specifically, each RTD Shake label plainly states that it fortified with 30 grams of protein on the front of the packaging and also indicates that there are 30 grams of protein per bottle in the Nutrition Facts section. This "30g protein" representation is identical throughout all of Defendant's RTD Shakes – however, based upon testing commissioned by Plaintiff's attorneys, the RTD Shakes were only shown to contain between 26.9 grams and 28.34 grams. *Id.* ¶¶ 10-11.

Accordingly, Plaintiff alleges that Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular." *Id.* ¶ 13. Defendant's false label statements are unlawful under state Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce. *Id.* ¶ 14.

### B.    The Litigation History And Settlement Discussions

On September 12, 2017, Plaintiff served his first set of Requests for Production of Documents and Interrogatories on Defendant. *See* Declaration of Philip L. Fraietta In Support Of Plaintiff's Motion For Final Approval Of First Amended Class Action Settlement ("Fraietta Decl.") ¶ 5. On September 18, 2017, Premier filed a letter requesting adjournment of the Initial Pretrial Conference, an extension of time for Rule 26 initial disclosures and discovery plan, and to stay all discovery pending the Court's decision on Premier's forthcoming motion to dismiss. *Id.* ¶ 6. That same day, the Court denied Premier's request to adjourn the Initial Pretrial Conference and for an extension of time for Rule 26 disclosures and a discovery plan, and held that the propriety of a stay can be argued in person at the Initial Pretrial Conference. *Id.*

On October 5, 2017, the Court held an Initial Pretrial Conference and declined to stay discovery. The Court also entered a Civil Case Management Plan and Scheduling Order. *Id.* ¶ 7.

On October 6, 2017, Defendant served its first set of Requests for Production of Documents and Interrogatories on Plaintiff. *Id.* ¶ 8.

On October 16, 2017, Premier filed a Pre-Motion Letter for its forthcoming Motion to Dismiss. *Id.* ¶ 9. On October 23, 2017, Plaintiff filed his Opposition to Defendant's Pre-Motion Letter for Motion to Dismiss. *Id.* On October 25, 2017, having considered the Parties' pre-motion letters, the Court granted Premier permission to file its motion to dismiss. *Id.*

On October 19, 2017, Defendant served its Responses to Plaintiff's First Set of Requests for Production of Documents and Interrogatories. *Id.* ¶ 10. On October 30, 2017, Plaintiff served his Responses to Defendant's First Set of Requests for Production of Documents and Interrogatories. *Id.* ¶ 11. On November 10, 2017, Defendant began its initial document production. Defendant made a subsequent document production on January 5, 2018. *Id.* ¶ 12.

On November 27, 2017, Premier filed its Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiff lacked Article III standing and failed to state a claim upon which relief could be granted. *Id.* ¶ 14. In response to purported deficiencies identified by Premier's Motion to Dismiss, Plaintiff filed his Amended Complaint on December 11, 2017. *Id.* On January 2, 2018, Premier filed its Motion to Dismiss Plaintiff's Amended Complaint. *Id.* ¶ 15. On January 15, 2018, Plaintiff filed his opposition to Premier's Motion to Dismiss. *Id.* On January 22, 2018, Premier filed its reply in support of its motion to dismiss. *Id.*

From the outset of the case, including during the pendency of the motion to dismiss, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of early resolution. *Id.* ¶ 16. Those discussions eventually led to an agreement between the Parties to engage in private mediation, which the Parties agreed would take place before Martin Quinn, Esq. *Id.* ¶ 17.

The mediation took place on January 22, 2018 at JAMS's offices in San Francisco and

lasted approximately ten hours. *Id.* ¶ 18. The Parties engaged in good faith negotiations, which at all times were at arms' length. *Id.* At the conclusion of the mediation, Mr. Quinn made a mediator's proposal to settle the case, which both sides accepted. *Id.*

On January 23, 2018, the Parties notified the Court by joint letter that they mediated before Martin Quinn, Esq., and that the Parties reached an agreement on the material terms of a class action settlement. ECF No. 41. As a result, on January 24, 2018, the Court issued a Memo Endorsement which deferred ruling on Premier's motion to dismiss. ECF No. 42.

On April 2, 2018, Plaintiff moved for preliminary approval of the Original Settlement. Fraietta Decl. ¶ 20 (citing ECF No. 51). On May 14, 2018, the Court granted Plaintiff's Motion for Preliminary Approval. *Id.* ¶ 22 (citing ECF No. 62).

On May 21, 2018, pursuant to that Order, Plaintiff's counsel subpoenaed Sam's Club and Costco for class member identifying data in order to provide direct notice to Settlement Class Members. *Id.* ¶ 23 (citing ECF No. 62 ¶ 13). Plaintiff's counsel worked diligently with counsel for both retailers to obtain the data promptly. *Id.* ¶ 24. However, the retailers did not complete their document productions within the time requested. *Id.* Sam's Club made its production on June 15, 2018, and while Costco originally promised to produce that same day, it did not make its production until August 6, 2018. *Id.*; *see also id.* ¶ 27. Thus, on July 5, 2018, the Parties submitted a joint letter to the Court requesting that the Court amend the Preliminary Approval Order to extend the deadlines to disseminate notice. *Id.* ¶ 25 (citing ECF No. 66). On July 10, 2018, the Court issued an Amended Order Granting Preliminary Approval. *Id.* ¶ 26 (citing ECF No. 68).

Thereafter, Plaintiff's counsel continued to work diligently with Costco's counsel to obtain its document production. *Id.* ¶ 27. However, Costco did not make its document production until August 6, 2018. *Id.* Upon receiving the data, the Parties, with the Settlement

Administrator, analyzed the data produced.  *Id.* ¶ 28.  That analysis showed that the retailers had produced a greater volume of data than the Parties had anticipated, thus necessitating additional notice costs, primarily due to increased postage for more direct mail.  *Id.*

As a result of those additional notice costs, the Parties decided to renegotiate the Original Settlement in an effort to deliver more cash relief to class members.  *Id.* ¶ 29.  These negotiations resulted in an agreement to shift the settlement from a $9 million hybrid fund, consisting of cash and product vouchers, to a $9 million all-cash fund.  *Id.* ¶ 30.  The Parties then entered into the First Amended Settlement Agreement on September 7, 2018.  *Id.* ¶ 31.

Additionally, on September 7, 2018, the Parties submitted a joint letter to the Court informing the Court of their agreement to the Amended Settlement, and requesting that the Court vacate the July 10, 2018 Amended Order Granting Preliminary Approval.  *Id.* ¶ 32 (citing ECF No. 69).  On September 10, 2018, the Court granted that request.  *Id.* ¶ 33 (citing ECF No. 70). And on September 14, 2018, the Court granted preliminary approval of the Amended settlement. *Id.* ¶ 39 (citing ECF No. 77).

<u>**TERMS OF THE AMENDED SETTLEMENT**</u>

The key terms of the First Amended Class Action Settlement Agreement ("Amended Settlement"), attached as Exhibit A, are briefly summarized as follows:

**A.    Class Definition**

The "Settlement Class" or "Settlement Class Members" is defined as:

> All persons in the United States (including its states, districts, or territories) who purchased Premier Protein Ready-To-Drink Protein Shakes from August 8, 2011 to the Notice Date [October 12, 2018].  Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely

request for exclusion from the class; and (4) the legal
representatives, successors, or assigns of any such excluded
persons.

Amended Settlement ¶ 1.30.

### B.    Monetary Relief

Defendant shall establish or cause to be established a $9 million non-reversionary

Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be

entitled to a *pro rata* cash payment, after payment of notice and administrative expenses,

attorneys' fees, and an incentive award to the Class Representative.  *Id.* ¶¶ 1.32, 2.1.  No portion

of the Settlement Fund will revert to Defendant.  *Id.* ¶ 2.6.

### C.    Injunctive Relief

Defendant has agreed to reevaluate and refresh its formulations for its Premier Protein

RTD Shakes, review its manufacturing specifications and protocols for co-manufacturers

producing Premier Protein RTD Shakes, and work with its co-manufacturers on best practices to

implement those specifications and manufacturing protocols in order to minimize the variability

of the protein content contained in the Premier Protein RTD Shakes.  *Id.* ¶ 2.7.

### D.    Release

In exchange for the relief described above, Defendant and each of its related and

affiliated entities as well as all "Released Parties" as defined in ¶ 1.27 of the Settlement will

receive a full release of all claims arising out of or related to the nutrient content, or the labeling

of the RTD Shakes.  *See id.* ¶¶ 1.26-1.28, 6.1 for full release language.

### E.    Notice And Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the

Agreement and any other notice as required by the Court, as well as all costs of administering the

Settlement.  *Id.* ¶¶ 1.17, 2.1.

### F.    Incentive Award

In recognition for his efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff Gregorio may receive, subject to Court approval, an incentive award of $5,000 from the Settlement Fund, as appropriate compensation for his time and effort serving as Class Representative and as a party to the Action. *Id.* ¶¶ 2.1, 3.3.

### G.    Attorneys' Fees And Expenses

Defendant has agreed that the Settlement Fund may also be used to pay Class Counsel's reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court. *Id.* ¶ 3.1. Class Counsel petitioned the Court for one-third of the Settlement Fund. *Id.*; *see also* ECF No. 80. Payment of attorneys' fees, costs, and expenses is due within 30 days after entry of the Court's Settlement Approval Order and Final Judgment. *Id.* ¶ 3.2.

## ARGUMENT

## I.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of: "all persons in the United States (including its states, districts, or territories) who purchased Premier Protein Ready-To-Drink Protein Shakes from August 8, 2011 to the Notice Date." ECF No. 77 ¶ 9 (the "Settlement Class").

Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to class members predominate
> over any questions affecting only individual members, and that a
> class action is superior to other available methods for fairly and
> efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive

construction, and courts are to adopt a standard of flexibility" in evaluating class certification.

*Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

The  Court should now grant final certification because the Settlement Class meets all of

the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    Numerosity

Numerosity is satisfied when "the class is so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  For purposes of Rule 23(a)(1), "[i]mpracticable does

not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "[N]umerosity is

presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473,

483 (2d Cir. 1995).  Here, the Settlement Class easily satisfies Rule 23's numerosity

requirement.  Based on Defendant's records, "the Parties estimate there are approximately

9,362,854 total Settlement Class Members."  12/28/18 Declaration of Orran Brown, Sr. ("Brown

Decl.") ¶ 17.  There is no question that joinder of all members of the Settlement Class would be

impractical and numerosity is satisfied.

### B.    Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact

common to the class."  Fed. R. Civ. P. 23(a)(2).  This commonality requirement is met "if

plaintiffs' grievances share a common question of law or of fact."  *Cent. States Se. & Sw. Areas*

*Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir.

2007).  The disputed issue of law or fact must "occupy essentially the same degree of centrality

to the named plaintiffs' claim as to that of other members of the proposed class."  *Krueger v.*

*N.Y. Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995) (internal quotations omitted).  "[A] single common issue of law will satisfy the commonality requirement." *Michalow v. E. Coast Restoration & Consulting Corp.*, 2011 WL 6942023, at *3 (E.D.N.Y. Nov. 17, 2011); *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999).  A common issue of law will be found if plaintiffs "identify some unifying thread among the members' claims." *Monaco*, 187 F.R.D. at 61 (internal quotations omitted).  A court may find a common issue of law even if there is "some factual variation among class members' specific grievances." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation.  Specifically, Plaintiff alleges that the common contention on which the claims of all class members depends is that Defendant misstated the amount of protein content on the labeling of its Premier Protein RTD Shakes.  Plaintiff contends that determination of the truth or falsity of this contention can be made on a class wide basis and will resolve an issue – the key issue in the case – central to each class member's claims at once.  Resolution of this common question requires evaluation of the question's merits under an objective standard, *i.e.*, the "reasonable consumer" test.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010).  Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

### C.    Typicality

Rule 23(a)(3) requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  Typicality is satisfied "when each class member's claim arises from the same course

of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Id.* at 936-37; *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) (stating denial of class certification "because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle … would destroy much of the utility of Rule 23").

Here, Plaintiff alleges that Defendant's mislabeling of its RTD Shakes is not a one-off situation unique to him, but rather, part of Defendant's alleged business of mislabeling the protein content in its RTD Shakes.  SAC ¶¶ 1, 9-10.  It is Plaintiff's contention that no matter the person – whether it be Plaintiff or other members of the putative class – the mislabeling of Defendant's RTD Shakes is done in the exact same manner and was directed at, or affected, both Plaintiff and the members of the putative class in the same exact way.  Accordingly, by pursuing his own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied.  *See, e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (Rakoff, J.) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-406 (S.D.N.Y. 2015) (Briccetti, J.) (same).

### D.    Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Generally, adequacy of representation entails inquiry as to whether:  1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the

litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both of these factors are met here.

In this case, Plaintiff – like each and every one of the Settlement Class Members – is a purchaser of Defendant's RTD Shakes that were allegedly mislabeled as to the stated amount of protein.  SAC ¶¶ 8-18.  Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the damages to which they are entitled.  As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class and his pursuit of this litigation should be clear evidence of that.

Likewise, Class Counsel – Bursor & Fisher, P.A. and Barbat, Mansour & Suciu PLLC – have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Fraietta Decl. ¶¶ 42-44.  As the Court already determined, Class Counsel "are competent and capable of exercising the responsibilities of Class Counsel."  ECF No. 77 at 3-4. Class Counsel regularly engages in major complex litigation involving consumer products, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country.  *Id.*; *see* Firm Resume of Bursor & Fisher, P.A., Fraietta Decl. Exhibit B; Firm Resume of Barbat, Mansour & Suciu PLLC, Fraietta Decl. Exhibit C; *see also Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.").

Further, Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery, participating in a private mediation with Martin Quinn, Esq. of JAMS, and ultimately, negotiating a favorable

class action settlement.  Fraietta Decl. ¶¶ 3-34.  In sum, Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

Accordingly, since Plaintiff and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.    The Proposed Settlement Class Is Ascertainable

Though it does not appear in the text of Rule 23, courts in this Circuit have recognized an "implied requirement of ascertainability."  *Ebin*, 297 F.R.D. at 566-67.  "The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definitive boundaries."  *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).  Here, the Settlement Class is defined as "[a]ll persons in the United States (including its states, districts, or territories) who purchased Premier Protein Ready-To-Drink Protein Shakes from August 8, 2011 to the Notice Date," October 12, 2018.  Dkt. 73-1 ¶ 1.30. That is sufficient to satisfy the ascertainability requirement.  *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407.

### F.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), the class must meet two criteria.  First, common questions of law or fact must "predominate" over any purely individual questions.  Fed. R. Civ. P. 23(b)(3).  Second, the class must demonstrate that class treatment is superior to other available methods for the fair and efficient adjudication of the controversy.  *Id.*  In the context of a settlement class, the issue of manageability "drop[s] out of the predominance analysis because the proposal is that there be no trial."  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (internal quotation marks omitted).  Instead, the court must determine that the legal or factual questions in each class member's case "are sufficiently similar to yield a cohesive class."

*Id.* Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1. Common Questions Predominate

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). To meet this requirement, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006).

As discussed above, the same common questions relevant to the Rule 23(a)(2) analysis predominate, including whether Defendant's representations concerning the protein content of its RTD Shakes are false, misleading, and/or likely to deceive the public. Every Class Member's claim may be proven by the same common evidence regarding the protein content of the RTD Shakes. Since common questions present a significant aspect of the case and can be resolved in a single adjudication, Rule 23(b)(3)'s predominance requirement is met.

Moreover, even in the litigation context, differences in state laws frequently do not predominate over common issues where the defendant's wrongdoing can be traced to a common practice or misrepresentation that affects all class members. In *Rodriguez v. It's Just Lunch, International*, for example, the court certified the state law fraud claims of a national class, explaining that such claims "can implicate common issues and be litigated collectively, despite the existence of state law variations, so long as the elements of the claim . . . are substantially similar and any differences fall into a limited number of predictable patterns which can be readily handled by special interrogatories or special verdict forms." 300 F.R.D. 125, 140-41 (S.D.N.Y. 2014); *see also Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 518 (S.D.N.Y. 2015) (noting that where common conduct might establish liability under a number of state laws,

predominance might be satisfied); *Ebin*, 297 F.R.D. at 569 (finding that plaintiffs had satisfied

the predominance test for nationwide litigation class despite the need to apply the laws of

numerous states, explaining that "because Defendant uniformly misrepresented [its product] to

all class members, this action with its standardized misrepresentations established by generalized

proof is appropriate for class certification"); *Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y.

July 7, 2017) (granting class certification of nationwide fraud class); *Rapoport-Hecht v. Seventh*

*Generation, Inc.*, 2017 WL 5508915, at *3 (S.D.N.Y. Apr. 28, 2017) ("the Court nonetheless

finds that certification of the proposed settlement class is appropriate here.  As Plaintiffs point

out, numerous courts have certified nationwide classes based on a common claim of unjust

enrichment . . .  and some have done so while explicitly recognizing that there are some minor

variations among states regarding the elements of unjust enrichment . . .").

      In sum, Plaintiff alleges a common course of conduct engaged in by Defendant.  In these

circumstances, courts find – particularly for purposes of settlement – that there is predominance

of common questions over individual issues.  *See Rapoport-Hecht*, 2017 WL 5508915, at *3

(holding that "the proposed settlement class meets the predominance requirement of Rule

23(b)(3)" and thus "certification of the settlement class is appropriate …"); *see also In re*

*Prudential Insur. Sales Practices Litig.*, 962 F.Supp. 450, 511-512 n.45 (D.N.J. 1997)

("*Prudential I*") (citing numerous other cases).

## 2.    A Class Action Is A Superior Mechanism

      The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether

"the class action device [is] superior to other methods available for a fair and efficient

adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule

23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class

members wish to bring, or have already brought, individual actions; and the desirability of

concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Here, class treatment here will facilitate the favorable resolution of all Settlement Class Members' claims.  Given that there are approximately 9,362,854 Settlement Class Members, the class device is the most efficient and fair means of adjudicating these claims.  "Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the time and other resources to bring their claims individually."  *Beckman v. Keybank, N.A.*, 2013 WL 1803736, at *3 (S.D.N.Y. Apr. 29, 2013); *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) (same).  Also, Plaintiff is unaware of any individual lawsuits that have been filed by Settlement Class Members arising from the same allegations.  Further, because we are in the context of a proposed settlement, whether the case would be manageable at trial is not of consequence.  *See Amchem*, 521 U.S. at 620.  Therefore, a class action is the superior method of adjudicating the Settlement Class Members' claims.

## II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009).  Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options.  *See* Fed. R. Civ. P. 23(c)(2)(B).  At its core, all that notice must do is "fairly apprise the

prospective members of the class of the terms of the proposed settlement and of the options that

are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual

notice, as long as counsel 'acted reasonably in selecting means likely to inform persons

affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d

Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). The Federal

Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See*

Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain*

*Language Guide* 3 (2010). The notice plan here easily meets these standards, as it provided

direct notice via a postcard or email to 7,111,352 Settlement Class Members, i.e., 96.9% of

known class members. *See* Brown Decl. ¶ 25.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it

met the requirements of Rule 23 and due process. *See* Dkt. 77 ¶ 12. The Plan has now been

fully carried out by professional settlement administrator BrownGreer. Pursuant to the Amended

Settlement, BrownGreer compiled the names, addresses and emails of 7,490,283 unique

Settlement Class Members from records provided by Defendant, Costco, and Sam's Club.

Brown Decl. ¶¶ 16-17. BrownGreer successfully delivered the Court-approved notice via email

to 4,340,256 class members and via postcard to 2,771,096 class members. *See id.* ¶ 25, Table 1.

Accordingly, the Court-approved notice successfully reached 96.9% of the Known Settlement

Class Members directly (and 76% of the estimated 9,362,854 total Settlement Class Members).

*See id.*[1] These summary notices also directed Settlement Class Members to the Settlement

---

[1] BrownGreer also notified the appropriate state and federal officials pursuant to CAFA. *See*
Brown Decl. ¶¶ 10-14.

17

Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees; and see deadlines and answers to frequently asked questions. *See id.* ¶ 8.

Moreover, BrownGreer undertook a supplemental notice campaign that included a press release and internet banner ads. The press release was issued on October 18, 2018 and was published by 165 media outlets with a combined potential audience of 82,335,420 people. *Id.* ¶ 27. Similarly, the banner ad was displayed 8,603,024 times to Settlement Class Members across more than 19,000 unique websites, and ultimately brought 9,163 users directly to the Settlement Website. *Id.* ¶ 28.

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

## III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Final approval of the Amended Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).[2] To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."

---

[2] Effective December 1, 2018, Rule 23(e) was amended. The 2018 amendment to Rule 23(e) provides factors for the Court to consider for approval of a proposed class action settlement. *See* Fed. R. Civ. P. 23(e)(2). The new Rule 23(e)(2) factors overlap with the Second Circuit's *Grinnell* factors, as set forth and discussed below.

*Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions. *Id.* at 117 (internal quotations omitted). If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### A.    The Proposed Amended Settlement Is Procedurally Fair (Fed. R. Civ. P. 23(e)(B)(2)(B))

The circumstances surrounding the Amended Settlement support the finding that the Amended Settlement is procedurally fair. Courts examining the procedural fairness of a settlement do so "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis*, 706 F.3d 426, 433 (2d Cir. 1983).

Class Counsel devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery, participating in a private mediation, and ultimately, negotiating a favorable class action settlement. Fraietta Decl. ¶¶ 3-34. From the outset of the case and including during the pendency of the motion to dismiss, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of early resolution. *Id.* ¶ 16. Those discussions eventually led to an agreement between the Parties to engage in private mediation, which the Parties agreed

would take place before Martin Quinn, Esq., who is a neutral affiliated with JAMS San Francisco. *Id.* ¶ 17. The mediation took place on January 22, 2018 at JAMS's offices in San Francisco and lasted approximately ten hours. *Id.* ¶ 18. The Parties engaged in good faith negotiations, which at all times were at arms' length. *Id.* At the conclusion of the mediation, Mr. Quinn made a mediator's proposal to settle the case, which both sides accepted. *Id.*

The negotiations leading to the Amended Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients. Moreover, the Amended Settlement was reached in the midst of briefing Defendant's motion to dismiss. *See* Fraietta Decl. ¶¶ 3-15, 19-22 (summary of litigation); *id.* ¶¶ 16-18, 29-34 (summary of negotiations). In such situations, courts, including the Second Circuit, adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for court approval." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.").

### B.    The Proposed Settlement Is Substantively Fair

In addition to being procedurally fair, the Amended Settlement is also substantively fair, reasonable, and adequate. "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). The nine *Grinnell* factors include: "(1) the

complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the

class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the

range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the

range of reasonableness of the settlement fund to a possible recovery in light of all the attendant

risks of litigation." *Id*. at *4 (quoting *Grinnell*, 495 F.2d at 463).  However, in reviewing and

approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor

of a settlement," rather courts "should consider the totality of these factors in light of the

particular circumstances." *Id.*  Here, the *Grinnell* factors weigh in favor of final approval.

### 1.    Litigation Through Trial Would Be Complex, Costly, And Long (Fed. R. Civ. P. 23(e)(2)(C)(i) and *Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to

avoid significant expense and delay, and instead ensure recovery for the Class.  "Most class

actions are inherently complex and settlement avoids the costs, delays and multitude of other

problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.

2d 164, 174 (S.D.N.Y. 2000).  Courts have consistently held that, unless the proposed settlement

is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy

and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517

F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

As discussed above, the Parties have engaged in extensive written discovery.  The next

steps in the litigation would have been resolution by the Court of Premier's Motion to Dismiss,

as well as depositions of the Parties, substantial electronically stored information discovery, and

contested motions for summary judgment and class certification, which would be at minimum

costly and time-consuming for the Parties and the Court and creates risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. More specifically, Plaintiff is aware that Defendant would continue to assert several defenses on the merits, including that Plaintiff's allegations are insufficient under Fed. R. Civ. P. 8 and 12(b)(6), and that Plaintiff's claims are preempted under the Food, Drug, and Cosmetics Act. Defendant would also continue to challenge Plaintiff's standing, including Plaintiff's ability to sue on behalf of non-named class members under *Bristol-Myers Squibb*. Looking beyond trial, Plaintiff is also keenly aware of the fact that Premier could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would attempt to argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.

The Amended Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal. Consequently, this *Grinnell* factor plainly weighs in favor of final approval.

**2.    The Reaction Of The Class Is Overwhelmingly Positive
        (Fed. R. Civ. P. 23(e)(2)(C)(ii) and *Grinnell* Factor 2)**

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with

the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 77 ¶¶ 12-14), and direct notice reached 96.9% of known Settlement Class members.  *See* Brown Decl. ¶ 25.  As of December 27, 2018, 246,438 unique claims were submitted.  Only 7 purported Settlement Class members have objected and only 135 requested to be excluded, representing approximately 0.00007% and 0.001% of the Settlement Class, respectively.  This exceptional participation rate from the Settlement Class leaves no question that the class members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness."  *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").  Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

As discussed above, the Parties have conducted written discovery, including initial document production and interrogatories.  *See supra*; *see also* Fraietta Decl. ¶¶ 5-12.  The documents included Defendant's organizational hierarchy, as well as nationwide sales data for all of Defendant's RTD Shakes throughout the entire class period.  In addition, Class Counsel commissioned testing to measure the amount of protein in Defendant's RTD Shakes.  *See* SAC Ex. A.  Class Counsels' experience in similar matters, as well as the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The discovery conducted in this matter clearly traverses this hurdle. This *Grinnell* factor thus also weighs in favor of final approval.

### 4. The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (Fed. R. Civ. P. 23(e)(2)(C)(i) and *Grinnell* Factors 4, 5, And 6)

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages, and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at *5. "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id*.

Although Plaintiff's case is strong, it is not without risk. Defendant has filed a Motion to Dismiss, and has made it clear that it will both move for summary judgment on various issues and vigorously contest the certification of a litigation class. In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Id.* at 177.

In the context of this litigation, Plaintiff and the Class face risks in overcoming Defendant's summary judgment motion and certifying a class. Moreover, further litigation will only delay relief to the Class Members. The proposed Amended Settlement alleviates these

risks, and provides a substantial benefit to the Class in a timely fashion. These *Grinnell* factors thus favor final approval.

The risk of maintaining the class status through trial is also present. The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would be reached only after decision on Defendant's Motion to Dismiss, after additional discovery is completed, and after exhaustive class certification briefing is filed. Defendant would argue that individual questions preclude class certification. Defendant would also argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the Class, Defendant would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. The proposed Amended Settlement eliminates this risk, expense, and delay. This factor weighs in favor of final approval.

### 5. Defendant Probably Could Withstand A Greater Judgment (*Grinnell* Factor 7)

Premier probably could withstand a greater judgment. However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9). Thus, at worst, this factor is neutral.

### 6. The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Fed. R. Civ. P. 23(e)(2)(C)(i) and *Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation omitted). "Instead, 'there is a range of reasonableness with respect to a

settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, class members with proof of purchase are eligible to receive a cash award subject to an estimated $34.40 cap after *pro rata* adjustment. Class members without proof of purchase are eligible to receive a cash award subject to an estimated $17.20 cap after *pro rata* adjustment. In addition, Defendant has agreed to injunctive relief and to pay the costs of notice and administration as well as reasonable attorneys' fees and costs for Class Counsel from the all-in fund established by the Settlement. Amended Agreement ¶¶ 1.32, 2.1, 2.3, 2.7. Weighing the benefits of the Amended Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Amended Settlement is more than reasonable. Moreover, when a settlement assures immediate payment of substantial amounts to Class Members and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (internal quotations omitted). Thus, these *Grinnell* factors also weigh in favor of final approval.

\* \* \*

All of the *Grinnell* factors weigh in favor of approval, and the Settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184

26

(quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)).  The Court should therefore grant final approval.

## IV.    THE OBJECTIONS TO THE AMENDED SETTLEMENT AND MERITLESS AND SHOULD BE OVERRULED

As aforementioned, seven individuals submitted objections to the Amended Settlement. *See* ECF Nos. 86 (Debra Vereen); 89 (Patrick S. Sweeney); 90 (Michael and Ursula Burkhalter); 91 (Dave Mager).  Of those, three were improperly submitted, as they were mailed to the Settlement Administrator, rather than the Court, Class Counsel, and Defendant's Counsel, as is required by the Preliminary Approval Order.  *See* 9/14/18 Order, ECF No. 77 ¶ 23; Brown Decl. ¶ 34, Ex. 15 (Paul Alexander, John Harrison, and Mark McCammon).  Those objections should be overruled accordingly.

Also, of the seven objections, six were filed *pro se*, and two (Mr. Mager and Mr. Sweeney) are known serial objectors to class action settlements.  As detailed in the Reply Memorandum Of Law In Support Of Plaintiff's Motion For Attorneys' Fees, Costs, Expenses, And Incentive Award, filed herewith, serial objectors "undermine the administration of justice by disrupting the settlement in hopes of extorting a greater share of the settlement for themselves and their clients," and their objections should be discounted accordingly.  *In re Public Offering Secs. Litig.*, 721 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (Scheindlin, J.).

The objections can categorized into two categories:  (1) objections to the class action settlement process; and (2) objections to the cash awards available under the Amended Settlement.  As discussed below, both categories of objections are ill-informed and meritless, and should be overruled accordingly.[3]

---

[3] Objections to the attorneys' fees sought by Class Counsel are addressed in the Reply Memorandum Of Law In Support Of Plaintiff's Motion For Attorneys' Fees, Costs, Expenses, And Incentive Award, filed herewith.

### A.    The Objections To The Class Action Settlement Process Are Ill-Informed And Meritless

Mr. Sweeney has objected to aspects of the class action settlement process.  ECF No. 89.

Specifically, Mr. Sweeney objects that the "[c]laims administration process fails to require

reliable future oversight, accountability and reporting about whether the claims process actually

delivers what was promised."  ECF No. 89 at 2.  That is false.  In the proposed final approval

order, the Court "retain[s] jurisdiction over all matters relating to administration, consummation,

enforcement, and interpretation of the Amended Settlement Agreement."  [Proposed] Final

Judgment And Order Of Dismissal With Prejudice ¶ 19.  In other words, if the Parties do not

implement the Settlement as they have promised, this Court retains jurisdiction over them to

enforce its order approving the Settlement.  Mr. Sweeney also objects that "[n]o timeframe for

completing administration of the monetary relief is set."  ECF No. 89 at 3.  That is also false.

Pursuant to the Amended Settlement "Claims will be paid thirty (30) days after … the Final

Settlement Approval Date."  Amended Settlement ¶ 2.3(b).  Mr. Sweeney admitted that he was

ignorant of this provision at his deposition:

> Q:    Are you aware, Mr. Sweeney, that pursuant to the
> settlement agreement in this case that the settlement
> administrator will pay class claims within 30 days after the
> claims deadline or the final settlement approval date?
>
> A:    My guess is I would be surprised if they do.  Off the top of
> my head I don't recall a time frame.

Sweeney Dep. at 86:2-9.  As such, Mr. Sweeney's objections should be overruled.

Mr. and Mrs. Burkhalter have also objected to aspects of the class action settlement

process.  ECF No. 90.  Specifically, they object that "class actions are typically considered

complicated, and that vague instructions lead to low participation rates."  *Id.* at 2.  But that is not

the case here.  Here, the claims process was exceptionally easy, as Settlement Class Members

were able to file claims online on the Settlement Website, or complete and mail a one-page paper

claim form.  Brown Decl. ¶ 29.  The ease of that process is confirmed by the 246,438 individuals who submitted timely claims.  *Id.* ¶ 30.

Mr. and Mrs. Burkhalter also object that "[t]he instructions on the notice were unclear," because "[t]he definition of '*file*' is not listed."  ECF No. 90 at 2.  But the notice forms and their content were already approved by this Court.  *See* 9/14/18 Order (ECF No. 77) ¶ 12 ("The Court approves, as to form, content, and distribution, the Media Plan set forth in the Amended Settlement Agreement, including … all forms of Notice to the Settlement Class as set forth in the Amended Settlement agreement and Exhibits B, C, D, E, and F, thereto.").  Moreover, the word "file" is not ambiguous in connection with a lawsuit.

Mr. and Mrs. Burkhalter additionally object on the basis that "Mr. Gregorio further claims 'personal injury' has occurred with respect to the false and deceptive practices by Premier Nutrition Corp."  ECF No. 90 at 3.  But that is false.  Plaintiff does not allege any personal injury claims, nor does the Amended Settlement release any personal injury claims.  *See* SAC (ECF No. 57); Amended Settlement ¶ 6.1.  As such, the Burkhalters' objection should be overruled.

**B.    The Objections To The Cash Awards Made Available By The Amended Settlement Are Meritless Because The Vast Majority Of Claimants Will Be Made Whole For Their Damages**

Five *pro se* objectors seemingly object to the amount of the cash awards that are available to them under the Amended Settlement.  ECF Nos. 86, 90; Brown Decl. Ex. 15.  These objectors all purport to have purchased large amounts of Defendant's RTD Shakes on a regular basis.  *Id.* For example, Ms. Vereen purports to have purchased approximately 18 Shakes per week for the last three years.  ECF No. 86.  And Mr. McCammon purports to have purchased between 600-900 Shakes since 2011.  Brown Decl. Ex. 15.  These objectors fail to consider, however, that under the Amended Settlement the vast majority of claimants will be made whole for their damages.  That is because Plaintiff alleges that the RTD Shakes were underfilled by

approximately 5-10% each.  Accordingly, even if Plaintiff ultimately prevailed at trial, damages would likely have been measured as "the difference at the time and place of acceptance between the goods accepted and the value they would have had if they had been as warranted," or, 5-10% of the purchase price per Shake, at most.  N.Y. U.C.C. § 2-714(b).  Thus, even assuming the damages were 10% per Shake, and even using Mr. and Mrs. Burkhalter's price figure of $1.39 per Shake, an individual with proof of purchase would had to have purchased more than 247 Shakes to reach $34.40 in actual damages.  Similarly, an individual without proof of purchase would had to have purchased more than 123 Shakes to reach $17.20 in actual damages.

Moreover, these objectors fail to consider that the Amended Settlement allows for Settlement Class Member to exclude themselves.  Amended Settlement ¶ 5.1(a).  Thus, individuals like the objectors who purchased unusually large amounts of RTD Shakes have the option to exclude themselves from the Amended Settlement and seek more compensation from Defendant.

In sum, the Amended Settlement provides the vast majority of claimants with cash awards greater than the likely actual damages they could recover, and it does so in a certain and proximate manner.  The Court should not allow a handful of objectors who allegedly purchased unusually large amounts of RTD Shakes to deny that substantial recovery to the Settlement Class.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Final Approval of the Amended Settlement and enter the Final Approval Order in the form submitted herewith.

Dated:  January 3, 2019

Respectfully submitted,


By:  */s/ Philip L. Fraietta*
        Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jmarchese@bursor.com
        pfraietta@bursor.com

L. Timothy Fisher (*Pro Hac Vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
        fklorczyk@bursor.com

**BARBAT, MANSOUR & SUCIU PLLC**
Nick Suciu III (*Pro Hac Vice*)
1644 Bracken Road
Bloomfield Hills, MI 48302
Telephone:  (313) 303-3472
Email:  nicksuciu@bmslawyers.com

*Class Counsel*

**CONSUMER LAW GROUP PC**
Anne Barker (*Pro Hac Vice*)
306 Joy Street
Fort Oglethorpe, GA 30742
Telephone:  (706)858-0325
Email:
Abarker.consumerlawgroup@gmail.com

*Supporting Counsel*